UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

_____

In re:
    Michael F. Montagne,
        Debtor.

Chapter 12 Case
# 08-10916

Filed & Entered
On Docket
December 21, 2009

_____

Bourdeau Brothers, Inc.,
        Plaintiff,
    v.
Michael F. Montagne, Diane Montagne,
and Montagne Heifers, Inc.,
        Defendants.

Adversary Proceeding
# 08-1024

_____

*Appearances:*    Lisa Chalidze, Esq.       James W. Spink, Esq.
                      Benson, VT                  Spink & Miller, PLC
                      *For Diane Montagne*      Burlington, VT
                                                   *For Bourdeau Brothers, Inc.*

**MEMORANDUM OF DECISION**
**DENYING DIANE MONTAGNE'S MOTION FOR SUMMARY JUDGMENT**

      Plaintiff Bourdeau Brothers, Inc. ("BBI") filed a complaint in Vermont state court against Michael F. Montagne (the "Debtor"), his wife Diane Montagne, and Montagne Heifers, Inc. ("MHI"), seeking payment for feed, grain, and other farm supplies BBI had sold to Michael and Diane Montagne for use in the Montagne farming operations (doc. # 4). BBI subsequently filed an amended complaint (doc. # 40) which alleged four counts: the first sought enforcement of two promissory notes Michael Montagne had signed; the second and third counts sought payment on open accounts BBI had with the Montagnes; and the fourth count alleged unjust enrichment against all Defendants. Id. After motion practice in the state court, Diane Montagne moved for summary judgment, arguing, inter alia, that the statute of frauds prevented BBI from recovering against her (doc. # 160). The state court never adjudicated this motion because Michael Montagne filed for chapter 12 bankruptcy relief, and the lawsuit was removed to this Court (doc. # 4). For the reasons set forth below, the Court denies Diane Montagne's motion for summary judgment.

JURISDICTION

      This Court has jurisdiction to enter a final order pursuant to 28 U.S.C. §§ 157(b)(2)(B) and (K) and 1334(a).

## PROCEDURAL HISTORY

BBI filed its complaint in this lawsuit in December 2007, entitled <u>BBI v. Michael Montagne, Diane Montagne, and Montagne Heifers, Inc.</u>, # S610-07 FC. Shortly thereafter, BBI moved for an <u>ex parte</u> writ of attachment against the Defendants' property (doc. # 6); the state court granted BBI that relief (doc. # 7). Diane Montagne immediately moved to dismiss the complaint and dissolve the writ of attachment (doc. # 8). Her arguments were based on her belief that she could not be liable for her husband's debts, and therefore the writ should be dissolved against her property. She contended that: (1) "marriage does not automatically render each spouse liable for debts incurred by the other. Spouses may serve as co-obligors on a debt if they co-sign the note"; (2) BBI's complaint and other pleadings "establish that Diane Montagne did not sign any promissory notes on which [BBI] relies. The two promissory notes were signed by Michael Montagne only"; (3) the invoices identify Michael Montagne as a sole obligor, as does BBI's internal records (doc. # 8, pp. 1-3)

Two months later, on February 14, 2008, Diane Montagne filed an emergency renewed motion to dissolve the attachment, asserting that the Vermont attachment rule was unconstitutional on a number of grounds, and requesting an evidentiary hearing (doc. # 42).

In April 2008, the state court held a hearing and heard testimony concerning the assets of the Montagnes and MHI, and the business transactions among BBI, the Montagnes, and Montagne Heifers, Inc. The court issued an order denying the motion for dissolution of the attachment on May 16, 2008 (doc. # 115). In its findings of fact, the state court found, <u>inter alia</u>, that Michael and Diane Montagne, as husband and wife, "were for many years engaged in dairy farming"; that Diane Montagne "was involved in the dairy farm operations"; BBI supplied the Montagne farming operation with feed and supplies, and continued to extend credit to the farming operation despite a large debt; BBI had a number of accounts billed to the Montagne farm operations; and the Montagnes did not dispute that they received the goods charged to the accounts. <u>Id.</u> pp. 2-4.

In its conclusions of law, the state court held, in relevant part:

> Regarding the issue of spousal liability, the Vermont Supreme Court has announced no black letter guide that this Court is aware of determining that one spouse is or is not subject to the debts of another if incurred during marriage. Instead, courts generally look to the underlying and overall economic circumstances of the marriage. <u>See</u>, 15 V.S.A. § 751(6).
>
> Here, Ms. Montagne does not dispute that the farming operations received the goods provided by Bourdeau Brothers Inc. She does not dispute that during her marriage to Mr. Montagne, she was part of the farming operation and benefitted from this family business. If anything, as the Court understands it, Ms. Montagne asserts that she should not be liable for the debts because she quitclaimed her interest in the Montagne farming operations when she separated from Mr. Montagne. While Courts certainly hope to encourage greater self-reliance and amicability between divorcing individuals and less reliance on the judicial system, the settlement between the Montagnes does not mean that she no longer owes a

2

debt to the plaintiff. The Montagnes, like any divorcing couple, cannot make an arrangement between themselves that is binding on a creditor that one of them no longer [is] liable for that debt.

(doc. # 115, p. 5).

On June 6, 2008, Mrs. Montagne filed a motion for reconsideration of the May 16th Order (doc. # 128). She argued: (1) that 15 V.S.A. § 751, which the state court had "relied upon" in its May 16th order, was inapplicable, and the Vermont common law had changed from the days when a wife's property could be used to pay her husband's debts, citing, inter alia, R & E Builders, Inc. v. Chandler, 144 Vt. 302, 304-05, 476 A.2d 540, 541 (1984), Proulx v. Parrow, 115 Vt. 232, 56 A.2d 623 (1948), and Rose v. Morrell, 128 Vt. 110, 259 A.2d 8 (1969); (2) imposition of disparate liability on married women violates the U.S. Constitution's Equal Protection Clause, citing Medical Center Hospital of Vermont v. Lorrain, 165 Vt. 12, 675 A.2d 1326 (1996); and (3) the state court's order violates the Common Benefits Clause of the Vermont Constitution, citing State v. Ludlow Supermarkets, Inc., 141 Vt. 261, 448 A.2d 791 (1982) and Baker v. State, 170 Vt. 194, 744 A.2d 864 (1999) (doc. # 128).

The state court denied the motion to reconsider on September 4, 2008 (doc. # 159), disputing that it had "relied upon" 15 V.S.A. § 751(6) when addressing the narrow legal issue of whether BBI would recover judgment in an amount equal or greater than the amount of the attachment. It also determined that Mrs. Montagne's arguments concerning liability for spousal debt were irrelevant to the ultimate legal issue (whether the attachment of Mrs. Montagne's property could be dissolved).

On September 8, 2008, four days after the state court denied the reconsideration motion, Diane Montagne filed the motion for summary judgment currently before this Court (doc. # 160). On September 30, 2008, BBI opposed the motion (doc. # 165) and, two days later, Michael Montagne filed his chapter 12 petition. The lawsuit was removed to this Court on October 2, 2008 (doc. ## 1, 166). On December 20, 2008, Mrs. Montagne filed a reply brief (doc. # 184).

FACTS

Diane Montagne attached a statement of undisputed facts to her motion for summary judgment (doc. # 160), in which she recited six facts. In its opposition to the motion, BBI asserted that each of those facts was either immaterial or disputed (doc. # 165). Consequently, the Court finds that there are no undisputed material facts in support of this motion for summary judgment.

SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the record shows no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(C); Fed. R. Bankr. P. 7056. A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law identifies which facts are material.

3

Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 247. Factual disputes that are irrelevant or unnecessary are not material. See id. The court must view all the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. See Cruden v. Bank of New York, 957 F.2d 961, 975 (2d. Cir.1992). In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. See Anderson, 477 U.S. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir.2004); Delaware & Hudson Ry. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir.1990). But if the opposing party does not come forward with specific facts to establish an essential element of that party's claim on which it has the burden of proof at trial, the moving party is entitled to summary judgment. See Celotex, 477 U.S. at 323-24, 325 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . . [T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.")"); State v. G.S. Blodgett Co., 163 Vt. 175, 180, 656 A.2d 984, 988 (1995).

DISCUSSION

**I.     Relevant Law and Law of the Case Doctrine**

As all of the arguments raised in the motion for summary judgment rely on state law, both with respect to Diane Montagne's property interests and her liability for the BBI debt that is the subject of the complaint, state law must guide this Court's analysis and determination of the issues. See Butner v. U.S., 440 U.S. 48, 54 (1979).

Of particular importance to adjudication of the issues Mrs. Montagne raises in her motion for summary judgment is the "law of the case" doctrine, which the Court has previously cited in this adversary proceeding.

> Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. These rules do not involve preclusion by final judgment; instead, they regulate judicial affairs before final judgment. In re PCH Assocs., 949 F.2d 585, 592 (2d Cir. 1991) (quoting 18C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4478 at 788 (1981)).

(doc. #225, p. 5). Simply because the state court did not comment on every argument that a party may have raised when it adjudicated whether to dissolve the writ of attachment, does not give the losing party free rein to raise those issues again:

> The fact that the state court did not specifically address those issues in its order does not mean that they were not considered, because law of the case doctrine encompasses issues previously "decided by necessary implication as well as those decided explicitly." In re Cummings, 381 B.R. 810, 823 (S.D. Fla. 2007) (citation omitted). Accord U.S. v. Yonkers Bd. of Educ., 856 F.2d 7, 11 (2d Cir. 1988). In the final analysis, the law of the case doctrine "operates to create efficiency, finality, and obedience within the judicial system." Al-

4

lapattah Servs., Inc. v. Exxon Corp., 372 F.Supp. 2d 1344, 1363 (S.D. Fla. 2005) (quotation omitted).

Id., p. 6. While the doctrine is not binding, it "counsels a court against revisiting prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Ali v. Mukasey, 529 F.3d 478, 490 (2d Cir. 2008) (internal quotation marks and citations omitted).

Finally, it is settled law that the law of the case doctrine applies when a state court case is removed to federal court:

> The orders entered by the state court are treated as though they had been entered by the federal court. See, e.g., In re Diet Drugs, 282 F.3d 220, 231-32 (3d Cir. 2002) ("After removal, interlocutory orders of the state court are transformed into orders of the court to which the case is removed."); Resolution Trust Corp. v. Northpark Joint Venture, 958 F.2d 1313, 1316 (5th Cir. 1992) ("A prior state court order in essence is federalized when the action is removed to federal court.").

Nasso v. Seagal, 263 F. Supp. 2d 596, 608 (E.D.N.Y. 2003).

## II. Application

Diane Montagne raises five arguments in her brief, all directed toward the conclusions that she has no liability to BBI for the goods delivered to the Montagne farming operation and she is entitled to summary judgment. She asserts (1) there was no written agreement between BBI and Diane Montagne compelling her to answer for the debt of Michael Montagne, and BBI has not established that any oral agreement existed requiring Diane Montagne to pay the debt of Mr. Montagne's sole proprietorship; (2) even if there had been an oral agreement making her liable for that debt, enforcement would be barred by the statute of frauds; (3) Vermont common law precludes collection of a husband's debts from a wife's assets; (4) collecting on such debt would violate the Equal Protection Clause of the U.S. Constitution and (5) the Common Benefits Clause of the Vermont Constitution. The Court will address each argument in turn.

### A. Existence of Written and Oral Agreements; Failure to Comply with the Statute of Frauds

The first and second arguments raised by Mrs. Montagne run together. She asserts that she cannot be responsible for the debts of her estranged husband because she did not sign any of the promissory notes, security agreements, UCC financing statements, or other documents BBI has relied upon to date. She adds that she made no oral agreement to be responsible for the BBI debts and, even she had, any recovery by BBI against her would be precluded by the statute of frauds because an oral promise to pay the debt of another is unenforceable under 12 V.S.A. § 181 if the original debtor remains liable after the promise is made. She interjects into this mix the statement that it is "undisputed" that the Montagne Dairy Farm was a "sole proprietorship" of Michael Montagne, and therefore, because she had no interest in the farming operation, she cannot be held liable on his debt.

In response, BBI points out the numerous statements that Mrs. Montagne has made in her counterclaim and third party complaint in this proceeding (doc. # 10),[1] which undercut her claim that she cannot be liable for the BBI debt. For example, at one point, she described her interest in the farm as follows:

> Upon creation of Ag Venture in 1998, Diane Montagne and her husband, Michael Montagne, had a long term, stable and positive lending relationship with another Vermont lender. . . to serve their credit needs in relation to their long-time farming operation at the Montagne farm.

Id. ¶ 18. BBI cites additional paragraphs in the counterclaim (¶¶ 14, 15, 16) where Mrs. Montagne referred to the farm as a marital asset, and described the separation agreement she had with Michael Montagne wherein she would transfer "all of her right, title and interest in the real estate and assets of the farming operation" to Michael Montagne, who would seek refinancing solely in his name.

The allegations that Diane Montagne has made in the counterclaim, which reflect her ownership interest in the Montagne farm, are admissions. See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (holding that allegations in a complaint are judicial admissions that bind a party "throughout the course of the proceeding") (internal quotation marks omitted). BBI also provides a copy of a loan document filed in the Ag Venture lawsuit (A.P. # 08-1023) where Mrs. Montagne signed documents as "owner" of the farm when certifying to Ag Venture's auditors the outstanding amounts due on the Montagne farm loans. See ex. to doc. # 165. These counterclaim admissions and documents show at the very least that Mrs. Montagne considered the assets of the farm to be owned by her and Mr. Montagne together. Mrs. Montagne's position that she could share in the marital assets but not the merital debts is not logical, nor does it have support in the evidence before the Court or the case law pertinent to the question.

Diane Montagne's conclusion that she signed none of the documents that would make her liable is not support by the record. She relies on a snippet of testimony at the state court attachment hearing, where an unidentified person stated that Mrs. Montagne did not sign either of the promissory notes between BBI and Michael Montagne (doc. # 160, transcript p. 39). There is no testimonial support for her statement that she did not sign any other documents (other than ledger cards, which is irrelevant) and, in any event, BBI's effort to collect on the two promissory notes comprised only one count of its four-count complaint against Michael Montagne, Diane Montagne, and MHI. Diane Montagne introduced no evidence on the open accounts that the Montagnes had with BBI to show that the farm debt was solely her husband's.

With respect to Mrs. Montagne's attempt to avoid liability by claiming that the Montagne Farm was a "sole proprietorship," she cites the same state court hearing transcript where an unidentified person stated that the Montagne Dairy was a sole proprietorship (doc. # 160, transcript pp. 100-01). This, by it-

---

[1] Subsequently, in this Court, BBI filed a second amended complaint and Diane Montagne filed an answer and counterclaim (doc. # 268). Since this motion for summary judgment preceded the filing of these documents, the Court relies on the counterclaim that was before the Court at the time the motion for summary judgment was filed.

6

self, is not sufficient to convert this assertion into a fact. Particularly given Diane Montagne's admissions in the counterclaim, it is clear that whatever legal structure the farm may have had, Diane Montagne considered herself and represented herself as having an interest in the farm during the relevant period where BBI delivered feed, grain, and other supplies on an open account. Whether the farm was a "sole proprietorship" is, at the very least, a disputed question of material fact, and does not provide Mrs. Montagne with a basis for summary judgment in this adversary proceeding.

Mrs. Montagne's argument that BBI has not established an oral agreement between it and her that requires her to pay Mr. Montagne's debts – which would be barred by the statute of frauds – misses the point. The statute of frauds relates to "a special promise to answer for the debt . . . of another." 12 V.S.A. § 181(2). Mrs. Montagne has not proven that the debt to BBI was in fact the debt of "another" (Mr. Montagne). Therefore, the Court rejects this statute of frauds argument in toto, due to a lack of both factual and legal grounds for relief.

### B. Vermont Common Law Precludes Collection of Husband's Debts from Wife's Assets

In support of her third argument, Mrs. Montagne quotes R & E Builders, Inc. v. Chandler, 144 Vt. 302, 304-05, 476 A.2d 540, 541 (1984) for the proposition that "[u]nder the common law, a wife's property could be used to pay her husband's debts. [Citations omitted.] Today, however, a wife's property is not subject to debts incurred by her husband." (doc. # 160, p. 4). As BBI counters:

> that does not mean that conversely a husband and wife cannot choose to operate a business together, as the Montagnes did here. Ms. Montagne in her pleadings described the farm as part of the couple's 'marital assets.' So her citation to cases involving real estate held by a wife in 'her own name,' protection from a husband's 'sole creditors,' and a wife's 'separate estate' are irrelevant

(doc. # 165, p. 6). The Court agrees because, once again, Mrs. Montagne has not proven the premise of her argument: that the debts were solely her husband's. In addition, Mrs. Montagne raised this same argument before the state court in her motion for reconsideration (doc. # 128, p. 2), using precisely the same language. The state court rejected this theory, stating that the question of spousal liability for debts is determined by "the underlying and overall economic circumstances of the marriage" (doc. # 115, p. 5). As a result, the law of the case doctrine is applicable here. The state court considered this issue and found it had no merit. This Court adopts the state court's finding and treats it as determinative.

### C. Equal Protection Clause and Common Benefits Clause Arguments

Mrs. Montagne's final two arguments rest upon the contention that both the U.S. and Vermont Constitutions prevent a party from deeming wives liable for the debts of their husbands. She asserts that the Equal Protection Clause of the U.S. Constitution upholds the position that women have equal property and contractual rights as men, and that married women have such rights independent of their husbands where a wife's separate property is not subject to the husband's debts. Her second assertion is that "holding Mrs. Montagne liable for the debts of her husband confers upon married men and their creditors, as a

7

class, the advantage of the value of married women's separately-owned assets to service and satisfy the debts of their spouses, in violation of the Common Benefits Clause" of the Vermont State Constitution (doc. # 160 p. 6). Again, the premise of Mrs. Montagne's argument is faulty: she has not shown it to be an undisputed fact that the BBI debt belongs solely to her husband.

Furthermore, Mrs. Montagne raised each of these contentions in state court. Similar to the "common law" argument above, the argument concerning the Common Benefits Clause repeats, word for word, language in her motion for reconsideration of the state court order denying her motion to dissolve the writ of attachment (compare doc. # 128 pp. 5-7 with doc. # 160 pp. 5-7). Her Equal Protection Clause argument in the instant motion was also lifted, word for word, from her motion for reconsideration (compare doc. # 128 p. 4-5 with doc. # 160, pp. 4-5). Although the state court was applying a reconsideration standard with respect to whether an attachment could be dissolved, it nevertheless considered and rejected both of these arguments. There, the essential focus of Mrs. Montagne's arguments supporting dissolution of the writ was that she had no responsibility for her spouse's debt, and the state court rejected it (doc. # 159). The law of the case requires this Court to consider these arguments as having already been decided against Mrs. Montagne.

D. Admonition Against Duplicative Arguments

The Court takes this opportunity to admonish Mrs. Montagne against raising arguments in this Court that the state court has already addressed. To do so wastes the time, attention, and resources of both opposing parties and the Court, and establishes a basis for the imposition of sanctions under Rule 9011.

### CONCLUSION

For the reasons set forth above, the Court denies Diane Montagne's motion for summary judgment (doc. # 160). This constitutes the Court's findings of fact and conclusions of law.

December 21, 2009  
Rutland, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

8