*Formatted for Electronic Distribution*                                                                                         *Not for Publication*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

_____

**In re:**
    **Michael F. Montagne,**
                      **Debtor.**

_____

**Bourdeau Brothers, Inc.,**
                      **Plaintiff,**
            v.
**Michael F. Montagne, Diane Montagne,**
**and Montagne Heifers, Inc.,**
                      **Defendants.**

_____

Filed & Entered
On Docket
January 22, 2010

**Chapter 12 Case**
**# 08-10916**

**Adversary Proceeding**
**# 08-1024**

*Appearances:*    James Spink, Esq. and Mary Peterson, Esq., for Bourdeau Brothers, Inc.
                     Jess Schwidde, Esq. and John Harrington, Esq., for Michael Montagne

**MEMORANDUM OF DECISION**
**GRANTING PLAINTIFF'S RENEWED MOTION TO DISMISS AMENDED COUNTERCLAIMS OF DEBTOR**
**AND GRANTING PLAINTIFF'S REQUEST FOR AN AWARD OF ATTORNEY'S FEES**

Plaintiff Bourdeau Brothers, Inc. ("BBI") filed a complaint in Vermont state court against Michael F. Montagne (the "Debtor"), his wife Diane Montagne, and Montagne Heifers, Inc. ("MHI"), seeking payment for feed, grain, and other farm supplies sold to Michael and Diane Montagne for use in their farming operations (doc. # 4). The original complaint asserted three causes of action: the first sought payment on two promissory notes, while the second and third sought payment on open accounts BBI had with Michael and Diane Montagne. Id. BBI subsequently filed an amended complaint (doc. # 40) which added an unjust enrichment cause of action. Id. After that proceeding was removed to this Court, BBI filed a second amended complaint (doc. # 263), and Debtor-Defendant Michael Montagne responded by filing an answer, affirmative defenses and counterclaim (the "Amended Counterclaim"[1]) (doc. # 270). BBI filed a motion to dismiss Michael Montagne's Amended Counterclaim and requested reimbursement of the reasonable attorney's fees it had incurred in bringing the motion to dismiss (doc. # 273).

For the reasons that follow, BBI's motion to dismiss the Amended Counterclaim is granted. (Dismissal of the Debtor's Amended Counterclaim framed as an objection to claim prohibits the Debtor from raising substantive arguments against BBI's proof of claim based upon breach of contract, negligence, abuse of process, punitive damages, offset, or equitable subordination, but is without

---

[1] Although this was not captioned as an amended counterclaim, it has been referred to as such in the BBI motion to dismiss (doc. # 273) and subsequent pleadings. The Court therefore refers to it herein as the Amended Counterclaim.

prejudice to the Debtor's right to challenge whether BBI has met its burden of proof at the objection to claim evidentiary hearing.) Further, the Court grants BBI's motion for attorney's fees to the extent that the Court deems them reasonable and attributable to Counts IV (objection to proof of claim) and VII (equitable subordination) of the Debtor's Amended Counterclaim, as explained below.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding and this motion to dismiss under 28 U.S.C. § 1334, 28 U.S.C. § 157(b)(2)(B) and (C), and the parties' stipulation to this Court's entry of a final judgment on the causes of action relating to this Title 11 case. See doc. # 205, pp. 2-3.

## PROCEDURAL HISTORY

BBI filed its complaint in December 2007, entitled BBI v. Michael Montagne, Diane Montagne, and Montagne Heifers, Inc., # S610-07 FC. Shortly thereafter, BBI moved for an ex parte writ of attachment against the defendants' property (doc. # 6), which the state court granted (doc. # 7). Michael Montagne filed an answer, affirmative defenses and counterclaim (doc. # 18); BBI later successfully moved to amend its complaint (doc. # 32, 36, 40),[2] and extensive litigation on a variety of issues ensued in state court. On October 2, 2008, Michael Montagne sought protection under chapter 12 of the Bankruptcy Code and filed a notice of removal of the BBI lawsuit (doc. # 1). In December 2008, Michael Montagne moved to dissolve the ex parte writ of attachment in favor of BBI (doc. # 186); BBI opposed that motion (doc. # 197). After additional briefing (docs. # 202, 207), this Court denied the motion (doc. # 225).

On March 26, 2009, BBI moved to amend its complaint a second time (doc. # 245, refiled a few days later as doc. # 253) to remedy certain "factual inaccuracies" contained in its earlier amended complaint. BBI explained that the previous amended complaint (doc. # 40) referred to the terms of two notes originally underlying its account with the Montagnes and that "BBI became aware that the notes themselves were paid off, and that the amounts shown due in its ledgers on the 'note account' were for subsequent purchases under invoice." Id. The second amended complaint clarified that the promissory notes were no longer in issue. Id. This Court entered an order granting the motion to amend on April 24, 2009 (doc. # 261); BBI filed its second amended complaint on April 27, 2009 (doc. # 263).

1. Relevant Litigation in Related Adversary Proceeding (A.P. # 08-1022)

In the meantime, litigation proceeded apace in a related adversary proceeding (A.P. # 08-1022), entitled Michael Montagne v. Ag Venture Financial Services, Inc. and Bourdeau Brothers, Inc., which the Debtor filed in this Court against two of his largest creditors. Of particular relevance to the instant lawsuit was BBI's motion to strike, sever claims, and compel a more definite statement (doc. # 8 in A.P. # 08-1022). In the Order granting that motion (doc. # 98 in A.P. # 08-1022), the Court sua sponte dismissed

---

[2] Michael Montagne never answered BBI's amended complaint.

2

three counts from the Debtor's complaint (in A.P. # 08-1022) that duplicated three affirmative defenses the Debtor had raised in A.P. # 08-1024 to ensure that those claims would be litigated only once, in the adversary proceeding involving the Debtor and BBI, rather than in two separate proceedings. With regard to the two remaining claims the Debtor had raised against BBI in his complaint in A.P # 08-1022 – objection to proof of claim and equitable subordination – the Court severed those claims from the complaint and permitted the Debtor to amend his counterclaim in the instant adversary proceeding (A.P. # 08-1024) to add those causes of action. The Court issued a warning to the Debtor in the context of granting BBI's motion for a more definite statement. It observed that the factual antecedents for the equitable subordination claim in the A.P. # 08-1022 complaint consisted of "slivers of fact" and that the Debtor had "not articulated what conduct by BBI – or more accurately, misconduct – would support such a claim." Id. p. 5. The Order went on to say:

> In particular, none of these allegations [concerning equitable subordination] is sufficient to establish a prima facie case that BBI had a fiduciary relationship with the Debtor or that a remedy is necessary to prevent fraud or injustice. If anything, to the extent they present a coherent plea for relief, it appears from this complaint that the Debtor wishes to invoke this relief against BBI solely to punish it for its alleged misconduct. That is not a proper use of equitable subordination.

Id. p. 4 (citations omitted). Addressing the objection to claim cause of action, the Court pointed out that the Debtor had not articulated "(i) which of the documents relied upon by BBI in support of its claims against the Debtor are defective and unenforceable; (ii) which balances due are incorrect and the product of erroneous and/or altered account ledgers; or (iii) on which accounts BBI had improperly capitalized interest." Id. p. 5.

The Court added that should the Debtor amend his answer, affirmative defenses, counterclaim and third party complaint, "he will have to support these claims by simple, concise, and direct allegations tied to particular facts. See Fed. R. Bankr. P. 7008 (incorporating Fed. R. Civ. P. 8(a) and 8(d))." Id. The Court then cautioned the Debtor that, should he elect to amend,

> it is not sufficient for him to merely repeat the same vague and conclusory allegations against BBI that he set forth in the Complaint in A.P. # 08-1022. If the Debtor files an amended pleading in A.P. # 08-1024 that is inadequate to support the new causes of action, and this forms the basis for BBI to file another motion challenging that pleading, the Court would be inclined to find that to constitute grounds for requiring the Debtor to pay any reasonable attorney's fees BBI incurs in connection with that motion.

Id.

    2.        Debtor's Amended Counterclaim in this Adversary Proceeding (A.P. # 08-1024)

On March 26, 2009, the Court issued an Order in this adversary proceeding authorizing the Debtor to file a motion to amend his answer, affirmative defenses, counterclaim, and third party complaint to add the objection to claim and equitable subordination causes of action that had been severed from A.P. # 08-

1022 (doc. # 246). Michael Montagne filed an amended answer, affirmative defenses, counterclaim, third party complaint and jury demand on April 4, 2009 (doc. # 258); however, this filing occurred before the Court had granted BBI's motion to amend. Michael Montagne filed his answer to the second amended complaint, with affirmative defenses and counterclaim, on May 7, 2009 (doc. # 270), which superseded the previously-filed amended pleading (doc. # 258). He included the following causes of action in the Amended Counterclaim: breach of contract (Count I), negligence (Count II), abuse of process (Count III), objection to proof of claim (Count IV), punitive damages (Count V), offset (Count VI), and equitable subordination (Count VII). Approximately one week later, BBI filed the motion to dismiss Michael Montagne's amended counterclaims with a request for attorney's fees (doc. # 273), currently before the Court. Michael Montagne filed opposition to BBI's motion to dismiss (doc. # 276) and BBI filed a reply (doc. # 278).

## DISCUSSION

**I.  Standard for Motion to Dismiss and Applicable Law**

BBI has moved to dismiss under Federal Rule of Bankruptcy Procedure 7012(b)(6) (made applicable by Fed. R. Civ. P. 12(b)). The U.S. Supreme Court enunciated a new standard for a motion to dismiss in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Subsequently, the Supreme Court further clarified the Twombly standard; its clarification is reprinted here at length:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at 557, 127 S.Ct. 1955 (brackets omitted).
>
> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949-50 (2009).

Though the Court will apply this federal standard for assessing whether the Amended Counterclaim can survive a motion to dismiss, it is state law that will guide the Court in its analysis and determination of the sufficiency of the state law causes of action (i.e., all except objection to claim and equitable subordination). See Butner v. U.S., 440 U.S. 48, 54 (1979).

## II.    Application

### A. *Initial Procedural Issues*

#### 1. Did Michael Montagne Need Leave of the Court to Amend His Counterclaim?

BBI asserts that Michael Montagne went beyond the terms of the Court's Order (doc. # 246) authorizing him to amend his responsive pleading to add the two claims severed from A.P. # 08-1022 when he added new causes of action to his counterclaim for punitive damages and abuse of process (doc. # 273, p. 2). BBI has a point because the Court, in its Order, permitted only certain amendments to the Debtor's counterclaim. However, Mr. Montagne could amend his answer, as a matter of right, in response to BBI's second amended complaint. Since his answer contained the counterclaim, Mr. Montagne had the right to amend it without leave of court. The Court, in its discretion, will allow the counterclaim to be amended to include the additional causes of action.

#### 2. Operation of the Law of the Case Doctrine in the Context of the Procedural Posture of the Current Motion to Dismiss

The law of the case doctrine posits that "[w]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). "The doctrine of law of the case comes into play only with respect to issues previously determined." Quern v. Jordan, 440 U.S. 332, 347, n. 18 (1979). It "is concerned with the extent to which law applied in a decision at one stage of litigation becomes the governing principle in later stages of the same litigation. . . Questions regarding application of law of the case arise when a party directly attacks a decision by attempting to have it corrected, annulled, reversed, vacated or declared void by the court that made it." Rezzonico v. H & R Block, Inc., 182 F.3d 144, 148 (2d Cir. 1999). In Sussman v. Crawford, 548 F.3d 195, 198 (2d Cir. 2008), the Second Circuit quoted Rezzonico, 182 F.3d at 148-49, as standing for the proposition that "the law of the case doctrine, which posits that a court's prior decision upon a rule of law generally should 'govern the same issues in subsequent stages in the same case,' is at its least binding in the context of interlocutory orders."

5

"Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. These rules do not involve preclusion by final judgment; instead, they regulate judicial affairs before final judgment." In re PCH Assocs., 949 F.2d 585, 592 (2d Cir. 1991) (quotation omitted). The doctrine "encompasses issues previously "decided by necessary implication as well as those decided explicitly," In re Cummings, 381 B.R. 810, 823 (S.D. Fla. 2007), and "operates to create efficiency, finality, and obedience within the judicial system." Allapattah Servs., Inc. v. Exxon Corp., 372 F. Supp. 2d 1344, 1363 (S.D. Fla. 2005).

Procedurally, the way the law of the case works is that if a court first resolves a motion to dismiss and is then presented with the same issues on summary judgment, the doctrine would not apply "because of the divergent standard of review applicable to motions to dismiss and motions for summary judgment." McAnaney v. Astoria Financial Corp., __ F. Supp. 2d __, 2009 WL 3150430 at * 7 (E.D.N.Y. Sept. 29, 2009) (citing Novel Ins. Co. v. City of New York, 2006 WL 2848121 at *4 (S.D.N.Y. Sept. 29, 2006) ("As a ruling in favor of a plaintiff on a motion to dismiss does not address the merits of a case, such ruling will not preclude a subsequent ruling in favor of a defendant on the same issue on a motion for summary judgment following discovery . . . The law of the case doctrine. . . does not preclude this Court from reconsidering issues on summary judgment that have initially been raised in the context of a motion to dismiss.")). On the other hand, the law of the case will apply if the court first resolves a motion for summary judgment on the merits and is later presented with the same issues on a motion to dismiss. In Seed v. Vannet, 2009 WL 5216937 (W.D. Wisc. Dec. 22, 2009), a motion for summary judgment had been decided before a motion to dismiss came before the court. The court stated:

> [M]y ruling on the parties' motions for summary judgment, which was made using facts outside the pleadings, must be considered in addressing plaintiffs' motion to dismiss because that ruling is the law of this case. Under the law of the case doctrine, a court ought not to re-visit an earlier ruling in a case absent a compelling reason such as manifest error or a change in the law that warrants re-examination.

Id. at * 7.

Since different adversary proceedings in the same main case do not constitute different "cases," it would follow that the law of the case doctrine as articulated in one adversary proceeding would apply in another adversary proceeding filed in the same case. See, e.g., Cohen v. Bucci, 905 F.2d 1111, 1112 (7th Cir. 1990) (stating that "[a]dversary proceedings in bankruptcy are not distinct pieces of litigation; they are components of a single bankruptcy case," and suggesting that law of the case might have applied had it been raised by the parties); Artra Group, Inc. v. Salomon Bros. Holding Co., 1996 WL 637595 at * 5 (N.D. Ill. Oct. 31, 1996) (holding that law of the case doctrine covers both litigation in main case and in adversary proceeding). See e.g., In re Gosman, 382 B.R. 826, 841-42 (S.D. Fla. 2007) (applying doctrine of judicial estoppel related to party's position in one adversary proceeding to another adversary proceeding in the same case, citing cases stating that a single bankruptcy case may have different contested mat-

6

ters and adversary proceedings that are individually dealt with before the case is closed, and suggesting that different adversary proceedings are components of a single bankruptcy case). Therefore, this Court finds it appropriate to apply the summary judgment findings entered in a related adversary proceeding (A.P. # 08-1023), to the extent they are relevant in this adversary proceeding, under the law of the case doctrine.

### B. *The Breach of Contract Claim*

Count I of Michael Montagne's Amended Counterclaim is a breach of contract cause of action. He asserts that BBI was "obliged to perform according to the terms of the Agreements" (although he does not specify what those "Agreements" were, or attach copies of them to his Amended Counterclaim); that BBI charged interest for credit extended to him, which he had not agreed to pay and at rates or amounts which he had not agreed to pay; BBI charged interest at unreasonably high rates and arbitrarily terminated its previous practice of recalculating charges on reasonable interest terms; BBI allocated payments to various accounts in a way that was at odds with the terms of the Agreements (in particular, applying more to accounts with lower interest rates and less to accounts with higher interest rates, and charging interest on interest); BBI delivered goods to locations where the Debtor was not present, making it impossible for the Debtor to discern the amounts delivered, and BBI had no internal control procedure to verify that the products had actually been delivered; and BBI failed to fulfill its duty to act in good faith and deal fairly with the Debtor (doc. # 270, p. 11).

    1.  The Parties' Arguments

BBI's argument focuses on the lack of facts to support Michael Montagne's breach of contract claim. It points out that Mr. Montagne did not dispute that his farm received BBI products for over a decade or that he received invoices and regular statements over that time period. More importantly, Mr. Montagne did not "specifically point to any term of contract breached by BBI," since even the statements in Count I concerning interest rates did not declare what the proper interest rate was but, rather, merely referred to earlier ad hoc arrangements that did not support a binding contractual obligation. Id. at 7. Nor did he allege any specific facts that would show, for example, that payments were required to be applied in some particular way, or that his signature was a condition of delivery. Id.

Michael Montagne does not offer any specific arguments against dismissal of the breach of contract cause of action. Mr. Montagne offers only a global defense that all of his causes of action comport with Fed. R. Civ. P. 8(a) notice pleading standards and are sufficiently supported by factual allegations, and refers to twenty particular factual allegations common to all of the causes of action in his Amended Counterclaim (doc. # 276 p. 2).

7

2. Standard

In defining the elements of a breach of contract claim, the Vermont Supreme Court has stated, "'[i]n the obligation assumed by a party to a contract is found his duty, and his failure to comply with the duty constitutes a breach.'" Lapoint v. Dumont Const. Co., 128 Vt. 8, 10, 258 A.2d 570 (1969). "To prove breach of contract, plaintiff must show damages. Two types of damages are recoverable: direct damages that naturally and usually flow from the breach itself, and special or consequential damages, which must pass the tests of causation, certainty and foreseeability." Smith v. Country Village Intern., Inc., 183 Vt. 535, 537, 944 A.2d 240, 243 (2007).

The implied covenant of good faith and fair dealing exists in every contract and ensures that each party work with "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Carmichael v. Adirondack Bottled Gas Corp. of Vt.,161 Vt. 200, 208, 635 A.2d 1211, 1216 (1993) (citing Restatement (Second) of Contracts § 205 cmt. a (1981)). "To carry its burden for the good-faith-and-fair-dealing claim, borrower must produce evidence that could lead a reasonable jury to conclude that [the lender] breached an implied-in-law promise not to do anything to undermine or destroy [borrower's] rights to receive the benefit of the parties' agreement." R & G Properties, Inc. v. Column Financial, Inc., 184 Vt. 494, 514, 968 A.2d 286, 300 (Vt. 2008) (citation omitted).

3. Analysis

In his brief, the Debtor has not specifically responded to BBI's motion to dismiss the breach of contract cause of action. As a result of this inadequate briefing, the Court finds that Mr. Montagne has waived his argument and BBI is entitled to relief on its motion to dismiss this cause of action. See In re Montagne, __ B.R. __, 2009 WL 5125280 at *4 (Bankr. D.Vt. Dec. 18, 2009) (citing Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir.1998) (holding that issues "not sufficiently argued in the briefs are considered waived" and normally are not addressed on appeal); American Tissue, Inc. v. DLJ Merchant Banking Partners, II, L.P., 2006 WL 1084392 at *6 (S.D.N.Y.Apr.20, 2006) (applying Norton rule to district courts); Fidelity Mortg. Group v. Mulvey, 2003 WL 25745703 *1 (Vt. May Term 2003) ("Briefs that do not set forth clear and cogent arguments are inadequate to aid our review, and we do not entertain arguments that are not adequately briefed.").

Even if the Court were to accept his argument that the twenty facts laid out in his facts common to all seven causes of action were sufficient under Fed. R. Civ. P. 8 to make this claim "facially plausible," that would not be sufficient to resuscitate this claim, particularly in a situation where litigation in both the state court and this Court has progressed for over two years. The Debtor cannot rely on the liberal notice pleading standard to excuse both a lack of argument and a lack of facts in his brief to undergird his claim. In addition, the Debtor has placed nothing before the Court (such as copies of the contracts or agreements he refers to in the Amended Counterclaim) that would permit the Court to determine what the "Agree-

8

ments" consist of, much less what their terms might be. This is especially critical with respect to the salient issues such as interest rates, receipt of products, and terms of prior workouts. Importantly, the Debtor specifies no term that BBI breached. He complains about the application of payments and amount/rate of interest charged, but does not articulate the terms to which the parties agreed to be bound with regard to interest rate or application of payments. These are essential facts that must be pled to support this cause of action.

The Court also rejects as facially implausible the Debtor's claim that BBI was required to apply its past practice of workouts to the allegedly unpaid and defaulted accounts that formed the basis of its complaint. The good faith and fair dealing element of the breach of contract claim is a "legal conclusion couched as a factual allegation." Iqbal, 129 S.Ct. at 1950. Hence, the Court dismisses Count I of the Amended Counterclaim.

### C. Negligence Claim

Count II of the Amended Counterclaim sets out a negligence cause of action. Here, Michael Montagne contends that, as an entity that regularly extends credit, BBI had a duty to: (a) conform to prudent lending practices, (b) act in a commercially reasonable and fair manner; (c) comply with laws regarding debt collection; (d) possess the knowledge or exercise the degree of care ordinarily exercised by a prudent business engaged in a similar practice under similar circumstances; and (e) "disclose matters in question, matters known to it that it knew to be necessary to prevent a partial or ambiguous statement of the facts from being misleading, and facts basic to the transaction" (doc. # 270, ¶¶ 70-74). Mr. Montagne asserts that BBI breached these duties and, as a consequence of those breaches by BBI, he suffered damages. Id. ¶¶ 75-76.

#### 1. The Parties' Arguments

BBI maintains that since the duties between it and the Debtor are found in documents related to the sale of goods, Michael Montagne cannot rely, as a matter of law, upon a negligence theory of recovery (doc. # 273, pp. 9-10). Mr. Montagne's truncated response provides that he "alleged five distinct sources of such a duty. See Answer ¶¶ 70-74" and that he was "not now required to prove a fully-developed theory of the case" but only to satisfy the pleading standard, which he has done (doc. # 276, p. 4).

#### 2. Standard

The elements of common law negligence are: (1) the defendant owed a legal duty to protect the plaintiff from an unreasonable risk of harm; (2) the defendant breached that duty; (3) the defendant's conduct was the proximate cause of plaintiff's injuries; and (4) the plaintiff suffered actual damage. Knight v. Rower, 170 Vt. 96, 102, 742 A.2d 1237, 1242 (1999). The element of duty "is central to a negligence claim, and its existence is primarily a question of law. The imposition of a duty is an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protec-

9

tion." O'Connell v. Killington, Ltd., 164 Vt. 73, 76, 665 A.2d 39, 42 (1995) (quotation marks and citations omitted). "The underlying analysis turns on whether there is a duty of care independent of any contractual obligations." Wentworth v. Crawford & Co., 174 Vt. 118, 127, 807 A.2d 351, 357 (2002) (citations and quotation marks omitted). In addition, "Vermont has adopted the economic loss rule, which prohibits recovery under tort for purely economic losses. . . [n]egligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm." Hunt Const. Group, Inc. v. Brennan Beer Gorman/Architects, P.C., 2008 WL 4870993 *2 (D.Vt. Nov. 3, 2008) (citations omitted). The economic loss rule "maintain[s] the boundary between contract law and tort law." Id. (citation omitted). A narrow exception to the economic loss rule exists "in a limited class of cases involving violation of professional duty," EBWS, LLC v. Britley Corp., 181 Vt. 513, 524, 928 A.2d 497, 507 (2007),which requires "a special relationship between the alleged tortfeasor and the individual who sustains purely economic damages sufficient to compel the conclusion that the tortfeasor had a duty to the particular plaintiff and that the injury complained of was clearly foreseeable to the tortfeasor." Springfield Hydroelectric Co. v. Copp, 172 Vt. 311, 316, 779 A.2d 67, 71 (2001).

       3. Analysis

The Court finds that Mr. Montagne has waived his opposition to the motion to dismiss the negligence cause of action because he insufficiently and only conclusorily argued against its dismissal in his brief.

Even if that were not the case, the Court agrees with BBI that the sources of "duty" the Debtor cites in support of his negligence claim are contract claims garbed in negligence clothing and are therefore insufficient to state a claim. Michael Montagne has cited no source of duty that BBI owed to him, independent of its contractual duty, and thus the negligence claim fails as a matter of law and must be dismissed. Mr. Montagne's invocation of Rule 8's relaxed pleading standard is not enough to withstand the motion to dismiss this negligence claim.

The Debtor relies upon BBI's alleged status as a "lender" and as a "debt collector" as the source of the legal duty that is the basis of his negligence claim. However, he supplies no facts that would show how the Vermont Licensed Lender Act ("LLA"), 8 V.S.A. § 2200 et seq. would apply in a manner separate from the duties BBI owes him under the contract. On summary judgment in A.P. # 08-1023 (doc. # 371), this Court rejected a similar counterclaim theory by Diane Montagne that posited that the LLA could give rise to a negligence cause of action. See In re Montagne, __ B.R. __, 2009 WL 5125280 * 9 (Bankr. D.Vt. Dec. 18, 2009) (finding that the LLA did not impose – even on lenders – a standard of care for lending or a tort duty to protect borrowers, and that Mrs. Montagne's negligence claims were related to the creditor's alleged breach of contract and did not assert improper conduct outside of the scope of

those contracts). Furthermore, as a matter of law, BBI is not required to comply with the LLA because the statute provides an exception for "a seller of goods or services that finances the sale of such goods or services." 8 V.S.A. § 2201(c)(7). BBI sold goods (grain, fertilizer), and financed the sale of those goods. Thus, it fits within that exception. Also, as BBI points out, the usury law allows parties to "contract for a rate of interest in excess of the rate provided in [8 V.S.A.] § 41a in the case of . . . obligations incurred by any person, partnership, association or other entity to finance in whole or in part income-producing business or activity." 9 V.S.A. § 46(2). See R. Brown & Sons, Inc. v. Credit Alliance Corp., 144 Vt. 142, 145, 473 A.2d 1168, 1169 (1984) (holding that loan to corporation's car-crushing business were incurred to finance income-producing activity and therefore the loan fell within the exception to the usury law). Moreover, Mr. Montagne does not allege any physical harm that would bring this economic claim within a negligence ambit. Therefore, he has failed to state a claim. With respect to Mr. Montagne's assertion that BBI violated debt collection statutes, the complaint provides only a conclusory, one-sentence statement that "BBI had a duty to comply with applicable laws regarding debt collection." He fails to provide any facts to show where such a duty arose, and how BBI breached that duty. Such conclusory statements do not suffice to support a claim under Fed. R. Civ. P. 8(a)(2). See Iqbal, 129 S.Ct. at 1950.

Thus, the Court dismisses Count II of the Amended Counterclaim.

### D. Abuse of Process and Punitive Damages

The paragraphs in the Amended Counterclaim devoted to the abuse of process cause of action (Count III) focus on BBI having obtained an ex parte writ of attachment on Mr. Montagne's real property. The Debtor alleges that BBI obtained the attachment based on allegations in its state court complaint and sworn witness testimony which it knew to be false (viz, that the promissory notes remained due and payable when they had in fact been paid off); it obtained the attachment on property held as tenants by the entireties despite the fact that such property was exempt from attachment to secure a sole obligation of one spouse; BBI's use of the courts to obtain the attachment was illegal and unauthorized; and BBI had an ulterior motive in obtaining the attachment – to coerce Mr. Montagne to enter into a refinancing transaction with Ag Venture, in which the principals of BBI had an ownership interest, because such refinancing transaction would also benefit BBI (doc. # 270, ¶¶ 78-83).

The punitive damages count (Count V) alleges that BBI acted in a "quasi-extortionate" manner intended to harm Mr. Montagne by creating a situation of economic duress when it sought a judicial lien and demanded payment of excessive unbargained for interest and attorney's fees. Mr. Montagne also alleges that BBI intended to coerce Mr. Montagne to engage in a fraudulent transaction that would benefit BBI's principals; and that BBI's conduct was deliberate, outrageous, and designed to inflict disproportionate expense, as well as emotional and financial stress on Mr. Montagne, so as to gain an unfair advantage over him and his other creditors (doc. # 270, ¶¶ 89-90).

1. The Parties' Arguments

BBI notes that it has consistently demanded payment for products delivered, and whether the two notes were retired does not change its right to payment or vitiate its claim with respect to the goods it delivered. It recites that this Court recently held a hearing on the attachment and rejected the Debtor's claim that BBI wrongly attached exempt property (referring to the Order denying Michael Montagne's motion to dissolve the ex parte writ of attachment, doc. # 225). In addition, BBI argues that punitive damages are not available in breach of contract actions unless the breach has the character of a willful and wanton tort and the party acted with actual malice, and the Debtor's assertions do not meet that high standard (doc. # 273, pp. 10-13).

Michael Montagne responds that while both the state court and this Court denied his requests to dissolve the attachment, those requests were grounded in theories different from the ones he now raises – that the promissory notes relied upon by BBI to obtain the attachment had been paid in full at the time BBI obtained the attachment and BBI knew or should have known that fact, and attachment was improper because it purported to apply to property that was subject to a tenancy by the entireties (doc. # 276, p. 3). In his brief, he does not address at all BBI's arguments seeking dismissal of the punitive damages cause of action.

2. Standard

In Vermont, "a plaintiff alleging the tort of abuse of process is required to plead and prove: (1) an illegal, improper, or unauthorized use of a court process; (2) an ulterior motive or an ulterior purpose; and (3) resulting damage to the plaintiff." Wharton v. Tri-State Drilling & Boring, 175 Vt. 494, 496, 824 A.2d 531, 536 (2003) (quotation and citation omitted).

"Punitive damages are generally not available in cases involving breach of contract. In extraordinary cases, punitive damages may be awarded upon a showing of "actual malice," that is, conduct manifesting personal ill will, evidencing insult or oppression, or showing a reckless or wanton disregard of plaintiff's rights." Green v. Peacock, 2008 WL 4906477 at *4 (Vt. Nov. Term 2008) (citations and quotation marks omitted). See Monahan v. GMAC Mortgage Corp., 179 Vt. 167, 187, 188-89, 893 A.2d 298, 316 (2005) ("Intentional, wrongful, and even illegal conduct will not justify punitive damages unless the evidence supports an inference of 'bad motive' evincing a sufficient degree of malice.'"). In addition, "[b]ecause the purpose of punitive damages is to punish conduct that is 'morally culpable' and 'truly reprehensible,' [the Vermont Supreme Court] has set a high bar for plaintiffs seeking such damages." Id. at 188.

3. Application

Even it were true that BBI knew its notes had been paid off when it filed its application for attachment, this does not permit the Court "to infer more than the mere possibility of misconduct": it is

"merely consistent with" a defendant's liability, but "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 129 S.Ct. at 1949 (citation omitted). The Court reaches this conclusion because the Debtor's "ulterior motive" theory relies on the fact that BBI's principals had an ownership interest in Ag Venture and, apparently because of that, and only because of that extremely attenuated connection linking BBI to Ag Venture, BBI wished to coerce Mr. Montagne to enter a refinancing agreement with Ag Venture that would be mutually beneficial to both BBI and Ag Venture. The Debtor does not provide additional facts that would support holding BBI's principals accountable for Ag Venture's alleged improprieties and the fact of overlap in ownership is not sufficient in itself to do so.[3] Nor does Mr. Montagne plead any facts that would show how he was damaged by this alleged abuse of process, a necessary element of the cause of action. For all of these reasons, the Court finds this abuse of process theory Mr. Montagne has propounded to be facially implausible.

Mr. Montagne's second theory that allegedly supports his abuse of process claim is that since the farm property was held by Mr. and Mrs. Montagne in a tenancy by the entireties, it was improper for BBI to attach it. Under Vermont law, entireties property cannot be used to pay the debts of one spouse so this theory has traction only if the BBI debt was owed by either Michael or Diane Montagne alone. See In re Hutchins, 306 B.R. 82, 89 (Bankr. D.Vt. 2004) (under Vermont law, a creditor of only one spouse may not attach a lien to a tenancy by the entirety; a lien may only attach if it is a joint debt) (citing Cooper v. Cooper, 173 Vt. 1, 20, 783 A.2d 430 (2001)). Preliminarily, Mr. Montagne does not state to whom the sole debt belonged: "BBI obtained its attachment on property held by tenants by the entireties notwithstanding the fact that such property was exempt from attachment to secure a sole obligation of one spouse" (emphasis added) (doc. # 270 ¶ 80). Additionally, this statement couches a legal conclusion as a factual allegation which means this Court is not bound to accept the statement as true. See Iqbal, 129 S.Ct. at 1949-50. Since this is the only "fact" supporting the entireties theory, the complaint does not state a plausible claim for relief.

In addition, the law of the case doctrine bars the abuse of process theory in toto. Both the state court and this Court have addressed numerous challenges to the writ of attachment by both Michael Montagne and Diane Montagne. Both courts have found, certainly implicitly if not explicitly by rejecting the many arguments proffered by the Montagnes, that there was no hint that BBI had, in any way, abused the judicial process by seeking the writ. See doc. ## 115, 225, 293.[4] When Michael Montagne moved to dissolve the writ of attachment in this Court, among the arguments he made were that since only Diane Mon-

---

[3] For example, Mr. Montagne does not seek to pierce either BBI's or Ag Venture's corporate veil to show that a fraud had been committed. In Vermont, courts will pierce the corporate veil "where the corporate form has been used to perpetrate a fraud, and also where the needs of justice dictate." Agway, Inc. v. Brooks, 173 Vt. 259, 262, 790 A.2d 438, 441 (2001).
[4] This Court denied a motion for summary judgment by Diane Montagne in this adversary proceeding (doc. # 293), where she denied liability on the BBI debt, claiming that the BBI debt was owed solely by her husband. The Court applied the law of the case doctrine and wrote that "the essential focus of Mrs. Montagne's documents supporting dissolution of the writ was that she had no responsibility for her spouse's debt, and the state court rejected it." Id. p. 8.

tagne challenged the writ and had a hearing in state court, he had a right to have his arguments for dissolving the writ heard at this time. He also raised a number of new arguments in support of dissolving the writ. This Court held that the law of the case required denial of his motion:

> In other words, while only Diane sought dissolution of the writ, the [state court] found that the writ covered assets of both Diane and Michael Montagne and ruled that neither of them had sufficient assets to justify dissolution. . . . For whatever reason, Michael Montagne did not challenge the writ of attachment in state court. He had ample opportunity to do so. He was bound by the writ and the order declining to dissolve the writ, and cannot be heard now to complain that he was denied due process. Based on the law of the case doctrine, the Court rejects the arguments raised by Michael Montagne in his reply brief.

(doc. # 225, p, 5, 6). Michael Montagne could have raised the entireties argument in state court, and in his earlier motion to dissolve the writ, but did not do so, and now seeks yet another opportunity to challenge the writ. The efficiency and finality of the judicial process would be sorely strained if this Court were to entertain yet another attack against the state court writ of attachment; it would be a waste of judicial resources to do so. Applying the law of the case doctrine, and based upon the fact that this cause of action does not state a plausible claim for relief, the Court dismisses Count III of the Amended Counterclaim (abuse of process).

With regard to the punitive damages cause of action, Michael Montagne does not address either the claim or BBI's arguments in his brief. Accordingly, he has waived his right to object to dismissal of this cause of action. Even if he had not waived this claim, the facts as pled are not sufficient to state a punitive damages claim. Michael Montagne's statement that BBI acted in a quasi-extortionate manner is conclusory and is entitled to no deference. Based upon the facts pled, his theory that BBI, acting through Ag Venture, sought to coerce Mr. Montagne to engage in a fraudulent transaction, is not plausible. BBI did not create the Debtor's financial problems and two courts have found that BBI's pursuit of the writ was legitimate. Under Vermont law, punitive damages are available only to remedy the most egregious of wrongs and are usually allowed in a breach of contract action. See Monahan, 179 Vt. at 187, 893 A.2d at 315. The Debtor has not presented facts to support either circumstance.

Therefore, the Court dismisses the abuse of process and punitive damages cause of action of the Amended Counterclaim (Counts III and V).

### E. Offset

The Amended Counterclaim, at Count VI, provides a one-paragraph statement to support Mr. Montagne's offset cause of action: "By reason of the foregoing claims, Mr. Montagne is entitled to an offset against BBI's claims, including a reduction in the amount of debt claimed by BBI" (doc. # 270, ¶ 93).

1. The Parties' Arguments

BBI folds its offset argument into its discussion of breach of contract and objection to proof of claim, pointing out that Michael Montagne's offset cause of action refers only to the contractual terms to

which the Debtor did <u>not</u> agree. It adds that none of these statements are facts, but rather are conclusory statements that amount to insufficient defenses and do not support a finding that the Debtor's claim of offset is plausible (doc. # 273 pp. 8-9). The Debtor does not specifically address the offset claim, or BBI's argument in support of dismissal of this cause of action.

    2. <u>Standard</u>

<u>Black's Law Dictionary</u> (8th ed. 2004) defines offset as "[s]omething (such as an amount or claim) that balances or compensates for something else; SETOFF." In Vermont, offset, or setoff, "is an affirmative defense." <u>Wilk Paving, Inc. v. Southworth-Milton, Inc</u>., 162 Vt. 552, 557, 649 A.2d 778, 783 (1994).

    3. <u>Application</u>

Michael Montagne does not provide any facts to support his offset claim in Count VI of the Amended Counterclaim. He also does not brief the issue. He has therefore waived the argument. In addition, this type of claim is properly asserted as an affirmative defense. Accordingly, the Court grants BBI's motion to dismiss the offset cause of action (Count VI).

    *F. Equitable Subordination*

Count VII of the Amended Counterclaim asserts that BBI's conduct has harmed other creditors and impaired the ability of those creditors to be paid on their claims because BBI "charged interest at unreasonably high rates, which it rarely if ever attempted to collect except in situations where a customer became insolvent, in which case the interest charge could be used to obtain a disproportionately high payment from the property of BBI's customer[s] to the prejudice of other creditors" (doc. # 270, ¶ 95). Count VII goes on to say that BBI allowed Mr. Montagne's account to grow to an "amount much greater than any reasonable supplier would have permitted," causing "substantial risk to [his] solvency" and ability to pay other creditors "because of BBI's belief that, through its connections with Ag Venture and otherwise, it would have greater knowledge than other creditors as to Mr. Montagne's ongoing financial situation." <u>Id.</u> The Debtor also refers to BBI's principals meeting with Ag Venture's principals shortly after it appeared that the Debtor was unwilling to participate in an Ag Venture-initiated "illegal attempt" to obtain a federal loan guarantee, and attempted to form a plan with Ag Venture so the two creditors would be paid to the disadvantage of other creditors. <u>Id.</u> ¶ 96. As an example of BBI's "close monitoring of [the Debtor's] financial situation," the Debtor once again raises the alleged impropriety of BBI's writ of attachment, "based in part on false allegations, made knowingly or with reckless disregard for their truth, as to the status of promissory notes allegedly documenting part of BBI's claim." <u>Id.</u>, ¶¶ 96, 97. This attachment, in the Debtor's eyes, gave BBI an "unfair advantage" against other creditors, as it constituted a "superior lien securing payment of an amount substantially in excess of the amount that BBI would have expected to be paid if Mr. Montagne had remained solvent." <u>Id.</u> ¶ 100.

1. The Parties' Arguments

BBI asserts that

> [i]t is wholly illogical for the Debtor to suggest that BBI would continue to supply goods to the farm based on some irrational hope that growing debt would give it an advantage over other creditors. Moreover, even if all these allegations are true, it demonstrates nothing more than an unpaid supplier exercising its collection rights when it became apparent, after publicly recorded transactions involving sale of real estate and cows, that no other workout was possible.

(doc. # 273, p. 14). The Debtor responds that it "has substantially severed allegations against Ag Venture from allegations against BBI, and has provided a more definite statement of its counterclaims against BBI," which cured the defects the Court identified in its March 2009 Order (doc. # 246) and allowed the Debtor to amend his responsive pleadings (doc. # 276, p. 4).

2. Standard

The Bankruptcy Code allows a court, "under principles of equitable subordination, [to] subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or [to] order that any lien securing such a subordinated claim be transferred to the estate." 11 U.S.C. § 510(c). "The concept of equitable subordination, as developed by case law, is that a claim may normally be subordinated only if its holder is guilty of some misconduct. It is a remedial, not a penal, measure that is used only sparingly." 4 Collier on Bankruptcy, ¶ 510.05[1] (15th ed.2008). It

> arises in equity to prevent fraud or injustice and usually arises when (1) the paying party has a liability, claim or fiduciary relationship with the debtor; (2) the party pays to fulfill a legal duty or because of public policy; (3) the paying party is a secondary debtor; (4) the paying party is a surety; or (5) the party pays to protect its own rights or property.

In re Hutchins, 400 B.R. 403, 413 (Bankr. D.Vt. 2009) (citations omitted.).

3. Analysis

Here again, the Debtor has waived his opposition to dismissal of this cause of action by failing to argue it in his brief. Even he had not, the facts presented do not state a claim. For example, Mr. Montagne does not articulate a factual predicate to delineate which of the five theories of equitable subordination (set out in Hutchins, supra) he is relying upon. Further, the Debtor's equitable subordination theory is implausible on its face. The Debtor cannot make a credible argument that it was to BBI's advantage to advance him many thousands of dollars to permit his farming operation to continue, even as the BBI debt became greater and the Debtor became less solvent. This merely increased the risk that BBI would not be paid. The notion that knowledge of the amount of the Montagnes' debt gave BBI an advantage over other creditors is ludicrous. The statement that BBI and Ag Venture conspired to be paid, to the disadvantage of other creditors, is not a fact, is not supported by any facts, and is wholly speculative and conclusory. The

Court will not address the attachment arguments, made once again in this context, as they are equally implausible and addressed above.

For these reasons, the Court dismisses Count VII of the Amended Counterclaim.

### G. *Objection to Proof of Claim*

Count IV of the Amended Counterclaim states: "The accounts and claims asserted in BBI's proof of claim should be disallowed or allowed in amounts less than those claims for the reasons stated herein and in the separately filed objection thereto" (doc. # 270, ¶ 86).

1. The Parties' Arguments

As indicated above, BBI has combined its objection to proof of claim, offset, and breach of contract arguments. Specifically concerning the objection to proof of claim, BBI maintains that the Debtor's statements that deliveries may have been short on quantity were based solely upon speculation and are not supportable. In a related vein, BBI asserts that the Debtor's statements that there were no signatures on delivery slips or invoices, payments were improperly applied on his accounts, or that he owes less or nothing to BBI are not supported by any specific facts. Moreover, the Debtor did not allege any facts that would contradict BBI's accounting (doc. # 273, pp. 7-8). The Debtor presents no argument to address these points in his brief.

2. Standard

Objections to proofs of claim are classic or "core" bankruptcy proceedings. See 28 U.S.C. § 157(b)(2)(B). Proofs of claim and objections to proofs of claim are governed by the Bankruptcy Rules 3001-3008. A bankruptcy compendium describes the standard for objections to proof of claim as follows:

> Generally, at a hearing on an objection to a claim, the initial burden of proof and the initial burden of going forward with the evidence are on the objecting party. An objection to a claim must be supported by enough evidence to rebut the prima facie evidence of the validity and amount of the claim presented by a duly executed and filed proof of claim. The party objecting to a claim must establish sufficient, credible facts to rebut the proof of claim. If the objecting party succeeds in overcoming the claimant's prima facie case, the claimant then has the burden of going forward with the evidence and of proving the validity of the claim by a preponderance of the evidence so that, once the objecting party has produced evidence rebutting the claimant's prima facie case, the ultimate burden of persuasion rests on the claimant.

Amjur Bankruptcy § 2648 (footnotes omitted).

3. Analysis

Since Michael Montagne offers no arguments against the dismissal of the objection to proof of claim in his brief, he has waived his argument against dismissal of this counterclaim. The Court therefore grants BBI's motion to dismiss the objection to proof of claim cause of action set out in Mr. Montagne's Amended Counterclaim. Consequently, Mr. Montagne will be precluded at trial from raising arguments based on the "facts" asserted in his Amended Counterclaim in response to BBI's objection to claim, and

from raising substantive arguments against BBI's proof of claim based upon breach of contract, negligence, abuse of process, punitive damages, offset, or equitable subordination. He will retain only his right to challenge whether BBI has sustained its burden of proof with respect to its proof of claim.

### H. Attorney's Fees

BBI contends that the Debtor's Amended Counterclaim "reasserted a claim for equitable subordination that suffered from the very same infirmities this Court cited in the Strike and Dismissal Order [doc. # 98 in A.P. # 08-1022] with respect to his original [equitable subordination] claim, and this claim is reworked again in the [Amended Counterclaim]" (doc. # 273 p. 4). The Debtor's new version of the equitable subordination claim "still describes nothing more than an unpaid supplier enforcing its collection rights, and fails to address the Court's direction that the Debtor must show fiduciary duty, fraud, or injustice." Id. BBI adds that the Amended Counterclaim's objection to claim cause of action suffers from a lack of facts that would support his claim that he owes less or nothing to BBI, and consists of conclusory allegations. As a result, pursuant to the Order warning the Debtor that if he chose to amend those claims, but repeated the same vague and conclusory allegations (doc. # 98 in A.P. # 08-1022), BBI urges the Court to award it reasonable attorney's fees for bringing the motion to dismiss. The Debtor does not specifically respond to BBI's request for attorney's fees.

The Court finds that the Debtor has waived the opportunity to oppose BBI's request for an award of attorney's fees by not interposing any arguments against it. The Court also finds that an award of attorney's fees is warranted. However, it will not grant attorney's fees for the entire motion to dismiss because the Order BBI relies upon to support its request related only to the sufficiency of the equitable subordination and objection to claim counts in the Amended Counterclaim. The current record in this proceeding does not include any documentation that would permit the Court to ascertain what amount of fees BBI incurred specifically for the equitable subordination and objection to claim components of the motion to dismiss the Amended Counterclaim, or whether that sum is reasonable. See 11 U.S.C. § 330(a). In the absence of a stipulation between the Debtor and BBI as to the award of fees, BBI must file a fee application setting forth a detailed accounting of the amount of time spent on these two components of the motion to dismiss, a clear specification of the tasks performed, the hourly rate of the attorney(s) who performed the work, and total award sought. See In re Fibermark, 349 B.R. 385 (Bankr. D.Vt. 2006).

### CONCLUSION

For the foregoing reasons, the Court grants BBI's motion to dismiss (doc. # 273) all of the causes of action contained in the Debtor's Amended Counterclaim, with the caveat set forth above with respect to the Debtor's rights to participate in the hearing on the allowance of BBI's proof of claim. In addition, the Court grants BBI's motion for reimbursement of the attorney's fees it incurred to present its motion to dismiss the objection to claim and equitable subordination causes of action in the Amended Counterclaim.

The Court will determine the amount of the award of attorney's fees in a separate order, after BBI files a fee application.

        This constitutes the Court's findings of fact and conclusions of law.

January 22, 2010                                                                   Colleen A. Brown
Rutland, Vermont                                                           United States Bankruptcy Judge