UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

_____

In re:
      Michael F. Montagne,
                  Debtor.

Chapter 12 Case
# 08-10916

Filed & Entered
On Docket
January 25, 2010

_____

Bourdeau Brothers, Inc.,
                  Plaintiff,
         v.
Michael F. Montagne, Diane Montagne,
and Montagne Heifers, Inc.,
                  Defendants.

Adversary Proceeding
# 08-1024

_____

*Appearances:*      *James Spink, Esq. and Mary Peterson, Esq., for Bourdeau Brothers, Inc.*
                          *Lisa Chalidze, Esq. for Diane Montagne*

**MEMORANDUM OF DECISION**
**GRANTING PLAINTIFF'S RENEWED MOTION TO DISMISS AMENDED COUNTERCLAIM**
**OF DIANE MONTAGNE AND DENYING REQUEST FOR ATTORNEY'S FEES**

      Plaintiff Bourdeau Brothers, Inc. ("BBI") filed a complaint in Vermont state court against Michael F. Montagne (the "Debtor"), his wife Diane Montagne, and Montagne Heifers, Inc. ("MHI"), seeking payment for feed, grain, and other farm supplies sold to Michael and Diane Montagne for use in their farming operations (doc. # 4). The original complaint asserted three causes of action: the first sought payment on two promissory notes, while the second and third sought payment on open accounts BBI had with Michael and Diane Montagne. Id. BBI subsequently filed an amended complaint (doc. # 40) which added an unjust enrichment cause of action. Id. After that proceeding was removed to this Court, BBI filed a second amended complaint (doc. # 263), and Defendant Diane Montagne filed an answer, affirmative defenses and counterclaim (the "Counterclaim") (doc. # 268). BBI filed a motion to dismiss all of Diane Montagne's causes of action set forth in the Counterclaim and requested reimbursement of the reasonable attorney's fees it had incurred in bringing the motion (doc. # 274). On January 23, 2010, Diane Montagne withdrew six of the eight causes of action. Only the negligent provision of pecuniary information and negligent supervision claims now remain. For the reasons that follow, the Court grants BBI's motion to dismiss these causes of action and denies BBI's request for attorney's fees.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding and this motion to dismiss under 28 U.S.C. § 1334, 28 U.S.C. § 157(b)(2)(B) and (C), and the parties' stipulation to this Court's entry of a final judgment on the causes of action relating to this Title 11 case. See doc. # 205, pp. 2-3.

## PROCEDURAL HISTORY

BBI filed its complaint in December 2007, entitled <u>BBI v. Michael Montagne, Diane Montagne, and Montagne Heifers, Inc.</u>, # S610-07 FC. Shortly thereafter, BBI moved for an <u>ex parte</u> writ of attachment against the defendants' property (doc. # 6), which the state court granted (doc. # 7). Diane Montagne immediately moved to dismiss the complaint and dissolve the writ of attachment (doc. # 8). Her arguments were based on her belief that she could not be liable for her husband's debts, and therefore the writ should be dissolved against her property (doc. # 8, pp. 1-3). Also in December 2007, Diane Montagne filed a counterclaim and third party complaint against, <u>inter alia</u>, BBI and Ag Venture Financial Services, Inc. ("Ag Venture"), another creditor of the Montagnes. Two months later, on February 14, 2008, Diane Montagne filed an emergency renewed motion to dissolve the attachment, asserting that the Vermont attachment rule was unconstitutional on a number of grounds, and seeking a hearing (doc. # 42).

In April 2008, the state court held a hearing and heard testimony concerning the assets of the Montagnes and MHI, and the business transactions among BBI, the Montagnes, and Montagne Heifers, Inc. The court issued an order denying the motion for dissolution of the attachment on May 16, 2008 (doc. # 115). In its findings of fact, the state court found, <u>inter alia</u>, that Michael and Diane Montagne, as husband and wife, "were for many years engaged in dairy farming"; that Diane Montagne "was involved in the dairy farm operations"; that BBI supplied the Montagne farming operation with feed and supplies, and continued to extend credit to the farming operation despite a large debt; that BBI had a number of accounts billed to the Montagne operation; and that the Montagnes did not dispute that they received the goods charged to the accounts. <u>Id.</u> pp. 2-4.

In its conclusions of law, the state court held, in relevant part:

> Regarding the issue of spousal liability, the Vermont Supreme Court has announced no black letter guide that this Court is aware of determining that one spouse is or is not subject to the debts of another if incurred during marriage. Instead, courts generally look to the underlying and overall economic circumstances of the marriage. <u>See</u>, 15 V.S.A. § 751(6).

> Here, Ms. Montagne does not dispute that the farming operations received the goods provided by Bourdeau Brothers Inc. She does not dispute that during her marriage to Mr. Montagne, she was part of the farming operation and benefitted from this family business. If anything, as the Court understands it, Ms. Montagne asserts that she should not be liable for the debts because she quitclaimed her interest in the Montagne farming operations when she separated from Mr. Montagne. While Courts certainly hope to encourage greater self-reliance and amicability between divorcing individuals and less reliance on the judicial system, the settlement between the Montagnes does not mean that she no longer owes a debt to the plaintiff. The Montagnes, like any divorcing couples, cannot make an arrange-

2

ment between themselves that is binding on a creditor that one of them no longer [is] liable for that debt.

Id., p. 5.

On June 6, 2008, Mrs. Montagne filed a motion for reconsideration of the May 16, 2008 Order (doc. # 128). The state court denied the motion on September 4, 2008 (doc. # 159), disputing that it had "relied upon" 15 V.S.A. § 751(6) when addressing the narrow legal issue of whether BBI would recover judgment in an amount equal or greater than the amount of the attachment. It also determined that Mrs. Montagne's arguments concerning liability for spousal debt were irrelevant to the ultimate legal issue (whether the attachment of Mrs. Montagne's property could be dissolved). Id.

In the meantime, on February 25, 2008, third party defendant Ag Venture moved to dismiss Diane Montagne's third party complaint against it or for a more definite statement (doc. # 48), which Diane Montagne opposed (doc. # 64). On June 24, 2008, the state court issued an entry order concerning Ag Venture's motion to dismiss the third party complaint (doc. # 137). The court observed:

> Ms. Montagne's counterclaim against Bourdeau Brothers focuses on the lending relationship between the Bourdeau Brothers and the Montagnes. The nature of the underlying complaint brought by Bourdeau Brothers against the Montagnes rests upon a claim of liability for an unpaid debt. Ms. Montagne's claim that the Bourdeau Brothers impermissibly applied payment to certain accounts while leaving others unpaid and engaged in the capitalization of interest concerns the underlying transactions raised in the initial complaint brought by Bourdeau Brothers. If true, Ms. Montagnes allegations against Bourdeau Brothers might, at least, diminish the amount of the claim made by Bourdeau Brothers. Therefore, this Court finds that Ms. Montagne's counterclaim against Bourdeau Brothers permissible [sic] under the Rules of Civil Procedure.

Id. pp. 3-4.

On October 2, 2008, Michael Montagne filed for chapter 12 bankruptcy relief (doc. # 1 in main case # 08-10916). BBI's lawsuit was removed to this Court (doc. # 1 in # 08-1024).

With regard to BBI's motion to dismiss currently before the Court, on March 26, 2009, BBI moved to amend its complaint (doc. # 245, refiled a few days later as doc. # 253) to remedy certain "factual inaccuracies" contained in its earlier amended complaint. BBI asserted that the previous amended complaint (doc. # 40) referred to the terms of two notes originally underlying its account with the Montagnes and that "BBI became aware that the notes themselves were paid off, and that the amounts shown due in its ledgers on the 'note account' were for subsequent purchases under invoice" Id. The second amended complaint clarified that the promissory notes were no longer in issue. Id. This Court entered an order granting the motion to amend on April 24, 2009 (doc. # 261); BBI filed its second amended complaint on April 27, 2009 (doc. # 263), and Diane Montagne filed an answer and counterclaim ("Counterclaim") on May 5, 2009 (doc. # 268). BBI then filed its motion to dismiss the Counterclaim (doc. # 274); Diane Montagne opposed the motion (doc. # 275); and BBI filed a reply brief (doc. # 277).

3

Also relevant to the motion to dismiss before the Court is the decision in related A.P. # 08-1023 (Ag Venture v. Michael Montagne, Diane Montagne, et al.) where the Court dismissed eight causes of action in Diane Montagne's counterclaim against Ag Venture (doc. # 371 in A.P. # 08-1023); this Court's decision denying Diane Montagne's motion for summary judgment against BBI where she asserted that she was not liable on the BBI claim (doc. # 293 in A.P. # 08-1024); and the recent decision granting BBI's motion to dismiss Michael Montagne's counterclaim (doc. # 307 in A.P. # 08-1024).

On January 23, 2010, Diane Montagne filed a document entitled "Withdrawal of Certain Affirmative Defenses and Counterclaims" (doc. # 309) in which she acknowledged the relevance of these recent rulings and withdrew six of the eight claims she had asserted against BBI. In this filing, Diane Montagne summarized these three recent decisions, acknowledged the similarity between the causes of action the Court had dismissed and some of Diane Montagne's pending counterclaims and affirmative defenses, articulated the potential impact the rulings and/or rationale of those decisions could have on her claims under the law of the case doctrine, and withdrew her Counterclaim causes of action based upon breach of contract, negligence, abuse of process, punitive damages, offset/recoupment, and fraud. As a result, the only causes of action that remain before the Court are negligent provision of pecuniary information and negligent supervision.

## DISCUSSION

**I.    Standard for Motion to Dismiss and Controlling Law**

BBI has moved to dismiss under Federal Rule of Bankruptcy Procedure 7012(b)(6), (made applicable by Fed. R. Civ. P. 12(b)). A newer standard for a motion to dismiss was enunciated in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Subsequently, the Supreme Court further clarified the Twombly standard, reprinted here at length:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Twombly., 550 U.S. at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at 557, 127 S.Ct. 1955 (brackets omitted).
>
> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, on-

4

> ly a complaint that states a plausible claim for relief survives a motion to dismiss. <u>Id</u>., at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S.Ct. 1937, 1949-50 (2009).

As both of the remaining causes of action in the Counterclaim assert state law causes of action, state law must guide this Court's analysis and determination of the issues. See <u>Butner v. U.S.</u>, 440 U.S. 48, 54 (1979).

## II.   Application of Legal Standard and Controlling Law

The Counterclaim contains 79 factual/background paragraphs, and alleges claims for fraud (doc. # 268, ¶¶ 78-81); recoupment (<u>id</u>. ¶¶ 82-84); negligence (<u>id</u>. ¶¶ 85-87); negligent provision of pecuniary information (<u>id</u>. ¶¶ 88-90); negligent supervision (<u>id</u>. ¶¶ 91-93); abuse of process (<u>id</u>. ¶¶ 94-96); breach of contract including breach of the contractual duty of good faith and fair dealing (<u>id</u>. ¶¶ 97-99); and punitive damages (<u>id</u>. ¶¶ 100-101). In light of Diane Montagne's recent withdrawal of claims, only the negligent provision of pecuniary information and negligent supervision causes of action are at issue.

### A. *Initial Procedural Issues*

#### 1. <u>Does Diane Montagne Need Leave of the Court to Amend Her Counterclaim</u>?

BBI asserts that Diane Montagne failed to seek leave to amend her Counterclaim, as required by Fed. R. Bankr. P. 7015, and failed to provide a redline version of the amended document, as required by the local rules (doc. # 274). It further complains that Mrs. Montagne's substantially rewritten Counterclaim was not justified, particularly since its amendment of the complaint was extremely narrow. <u>Id.</u> The Court finds that Mrs. Montagne was permitted to amend her answer, as a matter of right, in response to BBI's second amended complaint, which is the operative pleading. Since her answer contained the Counterclaim, Mrs. Montagne had the right to amend her Counterclaim without leave of court. In any event, the Court, in its discretion, will allow the "substantially rewritten" Counterclaim.

#### 2. <u>Did the State Court Rule on the Adequacy of Mrs. Montagne's Counterclaims</u>?

In her brief, Diane Montagne states that the state court judge "ruled on the adequacy of Mrs. Montagne's counterclaims as previously pled," quoting the passage from the Order, reprinted on page 3, <u>supra</u>:

5

(doc. # 275 p. 1, quoting doc. # 137 pp. 3-4). Contrary to Mrs. Montagne's assertion, the state court did not make a determination concerning the "adequacy" of her Counterclaim, but only as to whether it was "permissible" under Fed. R. Civ. P. 13 governing compulsory counterclaims. Adequacy and permissibility in pleading are distinct legal concepts, and this Court finds that the state court did not rule on the adequacy of Mrs. Montagne's Counterclaim. Therefore, to the extent Mrs. Montagne's argument against dismissal relies on a prior state court ruling on this point, the Court finds it to be without merit.

    3. <u>Does the Law of the Case Doctrine Apply to the Instant Motion to Dismiss?</u>

The law of the case doctrine posits that "[w]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983). "The doctrine of law of the case comes into play only with respect to issues previously determined." <u>Quern v. Jordan</u>, 440 U.S. 332, 347, n. 18 (1979). It "is concerned with the extent to which law applied in a decision at one stage of litigation becomes the governing principle in later stages of the same litigation. . . Questions regarding application of law of the case arise when a party directly attacks a decision by attempting to have it corrected, annulled, reversed, vacated or declared void by the court that made it." <u>Rezzonico v. H & R Block, Inc.</u>, 182 F.3d 144, 148 (2d Cir. 1999). In <u>Sussman v. Crawford</u>, 548 F.3d 195, 198 (2d Cir. 2008), the Second Circuit quoted <u>Rezzonico</u>, 182 F.3d at 148-49, as standing for the proposition that "the law of the case doctrine, which posits that a court's prior decision upon a rule of law generally should 'govern the same issues in subsequent stages in the same case,' is at its least binding in the context of interlocutory orders."

"Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. These rules do not involve preclusion by final judgment; instead, they regulate judicial affairs before final judgment." <u>In re PCH Assocs.</u>, 949 F.2d 585, 592 (2d Cir. 1991) (quotation omitted). The doctrine "encompasses issues previously "decided by necessary implication as well as those decided explicitly," <u>In re Cummings</u>, 381 B.R. 810, 823 (S.D. Fla. 2007), and "operates to create efficiency, finality, and obedience within the judicial system." <u>Allapattah Servs., Inc. v. Exxon Corp.</u>, 372 F. Supp. 2d 1344, 1363 (S.D. Fla. 2005).

If a court first resolves a motion to dismiss and is then presented with the same issues on summary judgment, the law of the case doctrine would not apply "because of the divergent standard of review applicable to motions to dismiss and motions for summary judgment." <u>McAnaney v. Astoria Financial Corp.</u>, __ F. Supp. 2d __, 2009 WL 3150430 at * 7 (E.D.N.Y. Sept. 29, 2009) (citing <u>Novel Ins. Co. v. City of New York</u>, 2006 WL 2848121 at *4 (S.D.N.Y. Sept. 29, 2006) ("As a ruling in favor of a plaintiff on a motion to dismiss does not address the merits of a case, such ruling will not preclude a subsequent ruling in favor of a defendant on the same issue on a motion for summary judgment following discovery . . . The law of the case doctrine. . . does not preclude this Court from reconsidering issues on summary

6

judgment that have initially been raised in the context of a motion to dismiss.")). By contrast, the law of the case will apply if the court first resolves a motion for summary judgment on the merits and is later presented with the same issues on a motion to dismiss. In Seed v. Vannet, 2009 WL 5216937 (W.D. Wisc. Dec. 22, 2009), the Court had already decided a summary judgment motion before it was presented with a motion to dismiss. In that procedural context, the court stated,

> [M]y ruling on the parties' motions for summary judgment, which was made using facts outside the pleadings, must be considered in addressing plaintiffs' motion to dismiss because that ruling is the law of this case. Under the law of the case doctrine, a court ought not to re-visit an earlier ruling in a case absent a compelling reason such as manifest error or a change in the law, that warrants re-examination.

Id. at * 7.

Since different adversary proceedings filed in the same main case do not constitute different "cases," it would follow that the law of the case doctrine as articulated in one adversary proceeding would apply in another adversary proceeding filed in the same case. See, e.g., Cohen v. Bucci, 905 F.2d 1111, 1112 (7th Cir. 1990) (stating that "[a]dversary proceedings in bankruptcy are not distinct pieces of litigation; they are components of a single bankruptcy case," and suggesting that law of the case may have applied but was not raised by the parties); Artra Group, Inc. v. Salomon Bros. Holding Co., 1996 WL 637595 at * 5 (N.D. Ill. Oct. 31, 1996) (holding that law of the case doctrine covers both litigation in main case and in adversary proceeding). See e.g., In re Gosman, 382 B.R. 826, 841-42 (S.D. Fla. 2007) (applying doctrine of judicial estoppel related to party's position in one adversary proceeding to another adversary proceeding in the same case, citing cases stating that a single bankruptcy case may have different contested matters and adversary proceedings that are individually dealt with before the case is closed, and suggesting that different adversary proceedings are components of a single bankruptcy case).

### B. *Negligent Provision of Pecuniary Information and Negligent Supervision*

The gravamen of Mrs. Montagne's negligent provision of pecuniary information count is that BBI, in the course of its business,

> failed to exercise reasonable care or competence in communicating information, and supplied false information for the guidance of others including Mrs. Montagne and the Franklin Superior Court in their business or professional transactions, on which they justifiably relied, thereby causing [her] pecuniary loss and the free use of her property.

(doc. # 268, ¶ 89).

Mrs. Montagne's negligent supervision claim against BBI reads:

> [BBI] failed to exercise reasonable care or competence and act as a reasonably prudent person in similar circumstances would act, thereby deviating from the standard of care, in its supervision of its employees, officers and agents, including Remi Bourdeau, in its extension of credit and/or its recording and calculation of amounts due on the debt alleged, and its use of documents that purport to be documenting the Montagne account(s).

7

Id. ¶ 92. After each substantive paragraph for these claims, Mrs. Montagne inserted her damages paragraph:

> As a direct, proximate and foreseeable result of the conduct described above, Mrs. Montagne has suffered emotional distress with accompanying significant physical symptomology, has incurred attorneys' fees and costs and other pecuniary losses, has been deprived of the free use of her property, and has suffered in reputation.

Id., ¶¶ 90, 93.

### 1. The Parties' Arguments

BBI argues that these claims fail because, under Vermont's economic loss rule, "negligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm" (doc. # 274, p. 8) (quoting Hunt Const. Group, Inc. v. Brennan Beer Gorman/Architects, P.C., 2008 WL 4870993 at *2 (D.Vt. Nov. 3, 2008). BBI posits that the narrow exception to the economic loss doctrine applies only where there is a duty of care independent of contractual obligations, and since Mrs. Montagne did not allege any facts showing that BBI owed her a duty of care outside the sale of farm goods, or that BBI's alleged negligence caused physical harm, she could not state a claim for any of the negligence torts.

Mrs. Montagne's sole argument in response to BBI's motion to dismiss the negligent provision of pecuniary information count is that BBI failed to address the elements of this cause of action (doc. # 275, p. 9). She contends that she amply supported her negligent supervision count by alleging that BBI allowed its Credit Manager or other officer: (i) "to generate two sets of documents, one with Mrs. Montagne's name on them," and "create an incomplete credit application unsigned by its alleged borrowers," (ii) to present documents to the state court bearing her name which had never been signed by her, (iii) present to the state court two notes that had been paid in full, as well as other documents that never secured the debt in question, and (iv) to extend credit beyond what was typical for similar businesses (doc. # 275 pp. 8-10).

### 2. Standards

#### a. *Negligent Provision of Pecuniary Information*

This Court can find no case decided by the Vermont Supreme Court that has recognized "negligent provision of pecuniary information" as a stand-alone cause of action in Vermont, or as a species of general negligence. In her brief, Diane Montagne cites the Restatement (Second) of Torts § 552 – which concerns "negligent misrepresentation"— as the definition of her "negligent provision of pecuniary information" tort. Negligent misrepresentation is well-established in this State:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable case or competence in obtaining or communicating the information.

Howard v. Usiak, 172 Vt. 227, 230-31, 775 A.2d 909, 913 (2001) (citing cases). The Howard Court was cognizant that negligent misrepresentation should not bleed into breach of contract theories:

> We have emphasized in prior cases the need to keep tort and contract theories separate so that negligence concepts do not overrun the limitations on contractual rights and remedies. We do so here by holding that 'information' for purposes of the elements of negligent misrepresentation does not normally include the intention to perform a contractual commitment.

Id. at 232, 775 A.2d at 913-14.

Vermont enforces the economic loss rule in negligence actions. Assessment of damages must comply with this rule, which

> prohibits recovery in tort for purely economic losses. The rule strives to maintain a separation between contract and tort law. In tort law, duties are imposed by law to protect the public from harm, whereas in contract the parties self-impose duties and protect themselves through bargaining. Thus, negligence actions are limited to those involving unanticipated physical injury, and 'claimants cannot seek, through tort law, to alleviate losses incurred pursuant to a contract.'

EBWS, LLC v. Britly Corp., 181 Vt. 513, 524, 928 A.2d 497, 507 (2007) (citations omitted). See also Springfield Hydroelectric Co. v. Copp, 172 Vt. 311, 315, 779 A.2d 67, 71 (2001) (economic loss doctrine bars recovery of damages for harm other than physical harm to persons or property under negligence principles.

   b. *Negligent Supervision*

The Vermont Supreme Court has held that a claim of negligent supervision is addressed by § 213 of the Restatement (Second) of Agency (1958), which provides:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless . . . in the employment of improper persons or instrumentalities in work involving risk of harm to others: in the supervision of the activity; or . . . in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Haverly v. Kaytec, Inc., 169 Vt. 350, 356-57, 738 A.2d 86, 91 (1999). The court went on to say that, pursuant to § 213,"liability exists only if all the requirements of an action of tort for negligence exist," and "the tort of negligent supervision must include as an element an underlying tort or wrongful act committed by the employee." Id.

   3. Analysis

Mrs. Montagne asserts that BBI failed to brief the elements of a cause of action for negligent provision of pecuniary information (doc. # 275 p. 9) and therefore has failed to establish grounds for dismissal of this claim. While it is true that BBI did not specifically address this cause of action, it may be due to the fact that no such tort exists in Vermont. BBI did argue in favor of dismissal of this claim insofar as it lumped all three negligence causes of action in the Counterclaim together, asserting that

Diane Montagne did not assert any facts showing that BBI owed her a duty of care and that her alleged damages were barred by the economic loss rule (doc. # 274 pp. 9-10). Although Mrs. Montagne set out in detail the elements of the negligent misrepresentation cause of action, that represents the sum total of her "argument." In her brief, she did not specify which facts in the record established those elements, nor did she otherwise argue how the facts she pled were sufficient to defeat a motion to dismiss. Her failure to present an argument constitutes a waiver of her opposition to dismissal of this count. As a result, BBI is entitled to relief on its motion to dismiss this cause of action. See In re Montagne, __ B.R. __, 2009 WL 5125280 at *4 (Bankr. D.Vt. Dec. 18, 2009) (citing Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir.1998) (holding that issues "not sufficiently argued in the briefs are considered waived" and normally are not addressed on appeal); American Tissue, Inc. v. DLJ Merchant Banking Partners, II, L.P., 2006 WL 1084392 at *6 (S.D.N.Y.Apr.20, 2006) (applying Norton rule to district courts); Fidelity Mortg. Group v. Mulvey, 2003 WL 25745703 *1 (Vt. May Term 2003) ("Briefs that do not set forth clear and cogent arguments are inadequate to aid our review, and we do not entertain arguments that are not adequately briefed.").

The predicate for a viable negligent supervision claim is a negligence cause of action. Since Mrs. Montagne has withdrawn the negligence cause of action, and the Court is granting BBI's motion to dismiss the negligent provisions of pecuniary information cause of action, the negligent supervision claim must fail. See Haverly, 169 Vt. at 356-57, 738 A.2d at 91; Brueckner v. Norwich Univ., 169 Vt. 118, 126-27, 730 A.2d 1086, 1093 (1999) (citing the Restatement (Second) of Agency for the proposition that liability for negligent supervision exists "only if all the requirements of an action of tort for negligence exist.").

### III. BBI's Motion for an Award of Attorney's Fees

BBI contends that since this Court has previously warned Michael Montagne that if he failed to support the claims asserted in his pleadings by "simple, concise and direct allegations tied to particular facts," he would be subject to sanctions (doc. # 98 in A.P. # 08-1022), Diane Montagne, as a co-defendant, should likewise be subject to sanctions if she fails to comply with that directive. BBI decries what it describes as

> a seemingly endless stream of frivolous pleadings and motions that has not moved this Court any closer to resolution of determining what payment is due for the large amount of goods that neither Mr. or Mrs. Montagne deny were delivered to their farm . .

(doc. # 274, p. 13). It also insists that Mrs. Montagne continues to rely on vague and conclusory allegations in her Counterclaim. Id. Mrs. Montagne responds that the Counterclaim sets forth "valid causes of action, based on sufficient factual allegations" that are not baseless (doc. # 275, p. 14-15).

10

Mrs. Montagne's Counterclaim, as filed, did contain several allegations that were vague, conclusory, and of questionable merit; this undoubtedly caused BBI significant time, effort, and frustration when responding to them. However, the Court will not, and cannot, impose sanctions under 28 U.S.C. § 1927[1] lightly. Sanctions are authorized "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose and upon a finding of conduct constituting or akin to bad faith. . . . In addition to the substantive requirement of 'bad faith,' [the Second Circuit has] imposed a procedural requirement of notice and an opportunity to be heard." Gollomp v. Spitzer, 568 F.3d 355, 368 (2d Cir. 2009) (internal quotation marks and citations omitted). Sanctions are also permitted pursuant to Rule 11(c) of the Fed. R. Civ. P., incorporated by Fed. R. Bankr. P. 9011, if the court determines that a party has violated Rule 11(b) by making false, misleading, improper, or frivolous representations to the court. Such a motion "must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Williamson v. Recovery Ltd. P'ship, 542 F.3d 43, 51 (2d Cir. 2008). "Rule 9011 parallels Federal Rule of Civil Procedure 11, containing only such modifications as are appropriate in bankruptcy matters. Thus, application of Rule 9011 is informed by Rule 11 jurisprudence." In re Negosh, 2007 WL 2445158 at *7 (E.D.N.Y. Aug. 22, 2007) (internal quotation marks & citations omitted). Finally, a bankruptcy court possesses an inherent power to curtail abusive litigation practices and protect its docket. Id.

While the circumstances here present a close call, on balance, the Court finds that sanctions are not warranted. First, Mrs. Montagne, in contrast to Mr. Montagne, had not been put on notice that certain specified conduct might result in sanctions (in the form of awarding attorney's fees). Such a warning is a fundamental prerequisite of fairness. See, e.g. Bankruptcy Rule 9011(c). Second, the Court weighs heavily the content and effect of Mrs. Montagne's withdrawal of claims (doc. # 309). There, Mrs. Montagne's attorney apologized to the Court and counsel "for any repetition of arguments that may have been made by her in the past" and explained that "it was not her intention to assert unnecessary arguments" or "to waste anyone's time." Id. p. 5. These statements persuade the Court that Mrs. Montagne and her attorney fully understand the requirement to file – and the risks of failing to file – papers that meet not only legal and procedural standards, but also the standards of professionalism and civility, when litigating in this Court. See 28 U.S.C. § 1927. Accordingly, BBI's motion for an Order directing Mrs. Montagne to reimburse it for the attorney's fees it incurred in filing and litigating the motion to dismiss are denied.

## CONCLUSION

For all of the reasons cited above, the Court grants BBI's motion to dismiss (doc. # 274) all remaining causes of action set forth in Diane Montagne's Counterclaim, namely the negligent provision of

---

[1] 28 U.S.C. § 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

11

pecuniary information and negligent supervision claims. The Court denies BBI's motion for an award of its attorney's fees in connection with its motion to dismiss.

This constitutes the Court's findings of fact and conclusions of law.

January 25, 2010                                              Colleen A. Brown
Rutland, Vermont                                    United States Bankruptcy Judge