*Formatted for Electronic Distribution*                                                      *Not for Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

_____

In re:
    Michael F. Montagne,                                                        Chapter 12 Case
            Debtor.                                                        # 08-10916
_____

Bourdeau Brothers, Inc.,
            Plaintiff,
       v.                                                                      Adversary Proceeding
Michael F. Montagne, Diane Montagne,                                          # 08-1024
and Montagne Heifers, Inc.,
            Defendants.
_____

*Appearances:*    *James Spink, Esq. and Mary Peterson, Esq., for Bourdeau Brothers, Inc.*
                          *Lisa Chalidze, Esq., for Diane Montagne*

### MEMORANDUM OF DECISION
### GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE DIANE MONTAGNE'S AFFIRMATIVE DEFENSES AND DENYING PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES

      Plaintiff Bourdeau Brothers, Inc. ("BBI") filed a complaint in Vermont state court against Michael F. Montagne (the "Debtor"), his wife Diane Montagne, and Montagne Heifers, Inc. ("MHI"), seeking payment for feed, grain, and other farm supplies BBI sold to Michael and Diane Montagne for use in their farming operations (doc. # 4). The original complaint asserted three causes of action: the first sought payment on two promissory notes, while the second and third sought payment on open accounts BBI had with Michael and Diane Montagne. Id. BBI subsequently filed an amended complaint (doc. # 40) which added an unjust enrichment cause of action. Id. After that proceeding was removed to this Court, BBI filed a second amended complaint (doc. # 263), and Defendant Diane Montagne filed an answer, affirmative defenses, and counterclaim (doc. # 268). BBI filed a motion to dismiss all fifteen of Diane Montagne's affirmative defenses and requested reimbursement of the reasonable attorney's fees it had incurred in bringing the motion (doc. # 292). On January 23, 2010, Diane Montagne withdrew most of her affirmative defenses, leaving only the affirmative defenses based upon homestead exemption, waiver and/or estoppel, unclean hands, and failure to mitigate damages (doc. # 309). For the reasons that follow, the Court grants BBI's motion to strike the affirmative defenses of waiver and/or estoppel, unclean hands, and failure to mitigate damages, and denies BBI's motion to strike the homestead exemption affirmative defense.  Lastly, the Court denies BBI's request for attorney's fees.

1

## JURISDICTION

This Court has jurisdiction over this adversary proceeding and this motion to dismiss under 28 U.S.C. § 1334, 28 U.S.C. § 157(b)(2)(B) and (C), and the parties' stipulation to this Court's entry of a final judgment on the causes of action relating to this Title 11 case, see doc. # 205, pp. 2-3.

## PROCEDURAL HISTORY

BBI filed its complaint in December 2007, under the caption of BBI v. Michael Montagne, Diane Montagne, and Montagne Heifers, Inc., # S610-07 FC. Shortly thereafter, BBI moved for an ex parte writ of attachment against the defendants' property (doc. # 6), which the state court granted (doc. # 7). Diane Montagne immediately moved to dismiss the complaint and dissolve the writ of attachment (doc. # 8). She asserted that she could not be held liable for her husband's debts, and therefore the writ against her property should be dissolved (doc. # 8, pp. 1-3). Also in December 2007, Diane Montagne filed a counterclaim and third party complaint against, inter alia, BBI and Ag Venture Financial Services, Inc. ("Ag Venture"), another creditor of the Montagnes. Two months later, on February 14, 2008, Diane Montagne filed an emergency renewed motion to dissolve the attachment, asserting that the Vermont attachment rule was unconstitutional on a number of grounds with a demand for hearing (doc. # 42).

In April 2008, the state court held a hearing and heard testimony concerning the assets of Mr. and Mrs. Montagne and MHI, and the business transactions among BBI, the Montagnes, and MHI. On May 16, 2008, the state court issued an order denying the motion for dissolution of the attachment (doc. # 115). In its findings of fact, the state court found, inter alia, that Michael and Diane Montagne, as husband and wife, "were for many years engaged in dairy farming"; that Diane Montagne "was involved in the dairy farm operations"; that BBI supplied the Montagne farming operation with feed and supplies, and continued to extend credit to the farming operation despite a large debt; that BBI had a number of accounts billed to the Montagne operation; and that the Montagnes had not disputed that they received the goods charged to their BBI accounts. Id. pp.2-4.

In its conclusions of law, the state court held, in relevant part:

Regarding the issue of spousal liability, the Vermont Supreme Court has announced no black letter guide that this Court is aware of determining that one spouse is or is not subject to the debts of another if incurred during marriage. Instead, courts generally look to the underlying and overall economic circumstances of the marriage. See, 15 V.S.A. § 751(6).

Here, Ms. Montagne does not dispute that the farming operations received the goods provided by Bourdeau Brothers, Inc. She does not dispute that during her marriage to Mr. Montagne, she was part of the farming operation and benefitted from this family business. If anything, as the Court understands it, Ms. Montagne asserts that she should not be liable for the debts because she quitclaimed her interest in the Montagne farming operations when she separated from Mr. Montagne. While Courts certainly hope to encourage greater self-reliance and amicability between divorcing individuals and less reliance on the judicial system, the settlement between the Montagnes does not mean that she no longer owes a debt to the plaintiff. The Montagnes, like any divorcing couples, cannot make an arrange-

2

ment between themselves that is binding on a creditor that one of them no longer [is] liable for that debt.

Id., p. 5.

On June 6, 2008, Mrs. Montagne filed a motion for reconsideration of the May 16, 2008 Order denying dissolution of the writ (doc. # 128). On September 4, 2008, the state court denied the motion (doc. # 159), disputing that it had "relied upon" 15 V.S.A. § 751(6) when addressing the narrow legal issue of whether BBI would recover judgment in an amount equal or greater than the amount of the attachment. It also determined that Mrs. Montagne's arguments concerning liability for spousal debt were irrelevant to the ultimate legal issue (whether the attachment of Mrs. Montagne's property should be dissolved). Id.

On October 2, 2008, Michael Montagne filed for chapter 12 bankruptcy relief (doc. # 1 in case # 08-10916). BBI's lawsuit was promptly removed to this Court (doc. # 1 in # 08-1024).

On March 26, 2009, BBI moved to amend its complaint (doc. # 245, refiled a few days later as doc. # 253) to remedy certain "factual inaccuracies" contained in its earlier amended complaint. BBI asserted that the previous amended complaint (doc. # 40) referred to the terms of two notes originally underlying its account with the Montagnes and that "BBI became aware that the notes themselves were paid off, and that the amounts shown due in its ledgers on the 'note account' were for subsequent purchases under invoice." Id. The second amended complaint clarified that the promissory notes were no longer in issue. Id. On April 24, 2009, this Court entered an order granting the motion to amend (doc. # 261); on April 27, 2009, BBI filed its second amended complaint (doc. # 263); and on May 5, 2009 Diane Montagne filed an answer, affirmative defenses, and counterclaim (doc. # 268) ("Affirmative Defenses"). BBI then filed a motion to dismiss Mrs. Montagnes' counterclaims (doc. # 274), which this Court recently granted (doc. # 310). BBI filed the instant motion to strike Diane Montagne's affirmative defenses (doc. # 292); Diane Montagne opposed the motion (doc. # 297); and BBI filed a reply brief (doc. # 302). Mrs. Montagne also moved to file under seal the deposition transcript of John Whitney, a former BBI employee, so it could be included as an exhibit in support of her opposition to BBI's motion to strike her affirmative defenses (doc. # 300). BBI filed an e-consent to this motion. The Court granted the motion (doc. # 304) and, on January 6, 2010, the transcript was filed "under seal" (i.e., with restricted access) (doc. # 305).

On January 23, 2010, Diane Montagne filed a document entitled "Withdrawal of Certain Affirmative Defenses and Counterclaims" (doc. # 309) in which she acknowledged the relevance of this Court's recent rulings under the law of the case doctrine, and withdrew her affirmative defenses based on

(i) unconstitutionality of collection efforts against Mrs. Montagne vis-à-vis the Equal Protection Clause of the U.S. Constitution and the Equal Benefits Clause of the Vermont Constitution;
(ii) non-compliance with the Statute of Frauds;

3

(iii) unenforceability of alleged lending agreement by virtue of the Vermont Licensed Lender Act, Vermont statutes and case law pertaining to treatment of married women and their property rights, the Vermont Statute of Frauds, and/or other applicable law;
(iv) acquiescence;
(v) full or partial payment;
(vi) recoupment and/or set-off;
(vii) failure of consideration as to Diane Montagne;
(viii) illegality;
(ix) failure to state a claim on which relief can be granted, including but not limited to any claim for attorneys' fees and costs of collection;
(x) breach of contract;
(xi) failure to act in a commercially reasonable manner; and
(xii) usury[1].

Id. As a result, the only affirmative defenses that remain are those based upon homestead exemption, waiver and/or estoppel, unclean hands, and failure to mitigate damages. Id.

## DISCUSSION

**I. Standard for Motion to Strike and Controlling Law**

Fed. R. Bankr. P. 7012(f) incorporates Fed. R. Civ. P. 12(f) and addresses motions to strike; it provides:

> Upon motion. . . made by a party . . . or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed. R. Bankr. P. 7012(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief." Donnelly v. Commonwealth Fin. Sys., Inc., 2008 WL 762085, * 4 (M.D. Pa. Mar. 20, 2008).

In Tracy v. NVR, Inc., 2009 WL 3153150 (W.D.N.Y. Sept. 30, 2009), the court set out the pleading standard for affirmative defenses as well as motions to strike affirmative defenses, concluding that the same standard applies to both:

> Rule 8(c) of the Federal Rules of Civil Procedure governs the pleading of affirmative defenses. "Affirmative defenses are ... subject to the general pleading requirements of Rules 8(a) [and] 8(e) ..., generally requiring only a short and plain statement of the facts." Saratoga Harness Racing, Inc. v. Veneglia, 1997 WL 135946, *6 (N.D.N.Y.1997) (quoting Instituto Nacional De Comercializacion Agricola v. Continental Illinois Nat'l Bank & Trust Co., 576 F.Supp. 985, 988 (N.D.Ill.1983)). . . .
>
> Although motions to strike affirmative defenses are "generally disfavored," Barber v. RLI Ins. Co., 2008 WL 5423106, *5 (N.D.N.Y.2008) (citing Quanta Specialty Lines Ins. Co. v. Investors Capital Corp., 2008 WL 1910503, *4 (S.D.N.Y.2008)), affirmative defenses that contain only "bald assertions" unaccompanied by supporting facts will be stricken. Schecter v. Comptroller of City of New York, 79 F.3d 265, 270 (2d Cir.1996)

---

[1] Diane Montagne listed fifteen affirmative defenses in her answer. The reason that she has withdrawn twelve and four still remain is because one of her affirmative defenses, denominated as number 14 in her answer, contained two components: failure to mitigate damages and failure to act in a commercially reasonable manner, and she has withdrawn only the latter component of that defense.

4

> (striking affirmative defense; noting that affirmative "defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy"). Indeed, the[Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)] plausibility standard applies with equal force to a motion to strike an affirmative defense under Rule 12(f). Aspex Eyewear, Inc. v. Clariti Eyewear, Inc., 531 F.Supp.2d 620, 622 (S.D.N.Y.2008). See also FSP, Inc. v. Societe Generale, 2005 WL 475986, *8 (S.D.N.Y.2005) ("[a] motion to strike an affirmative defense, pursuant to Fed.R.Civ.P. 12(f), is also governed by the same standard applicable to a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)"); Solvent Chem. Co. v. E.I. Dupont De Nemours & Co., 242 F.Supp.2d 196, 212 (W.D.N.Y.2002) ("[t]he standard for striking an affirmative defense is the mirror image of the standard for considering whether to dismiss for failure to state a claim").

Id. at * 7.

"The majority of cases applying the Twombly pleading standard to affirmative defenses and striking those defenses have permitted the defendant leave to amend." Hayne v. Green Ford Sales, Inc., __ F. Supp. 2d __, 2009 WL 517779 *4 (D. Kan. Dec. 22, 2009). Fed. R. Civ. P. 15, incorporated into Fed. R. Bankr. P. 7015, instructs that leave to amend pleadings "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Notwithstanding this liberal standard, a court may deny leave to amend where there has been undue delay or bad faith on the moving party's part, prejudice to the non-movant, or where leave would be futile. See Monahan v. New York City Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). "If the underlying facts or circumstances relied upon by a [party] may be a proper subject of relief [s]he ought to be afforded an opportunity to test [her] claim on the merits." Foman, 371 U.S. at 182. Where there is no merit in the proposed amendments, leave to amend should be denied. See Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990). In addition, granting leave to amend is futile if it appears that a party cannot address the deficiencies identified by the court and allege facts sufficient to support the claim. Joblove v. Barr Labs., Inc., 466 F.3d 187, 220 (2d Cir. 2006).

All of Diane Montagne's remaining affirmative defenses are based on state law. Accordingly, state law must guide this Court's analysis and determination of the issues. See Butner v. U.S., 440 U.S. 48, 54 (1979).

## II.    Application

### A. *Initial Procedural Issue*

Diane Montagne pled her affirmative defenses as "bald assertions," in list form unaccompanied by supporting facts (doc. # 268, pp. 8-9). As such, these defenses (including the four that remain extant) are too conclusory to give BBI fair notice of the grounds upon which they rest, and do not comport with Fed. R. Civ. P. 8 or the Twombly pleading standard. See Tracy, 2009 WL 3153150 at * 7. Ordinarily, under these circumstances, the Court would be inclined to grant BBI's motion to strike the remaining affirmative defenses and to grant Diane Montagne leave to amend them to assert the requisite supporting facts.

5

However, trial on BBI's complaint is only two weeks away; that is an insufficient amount of time for Diane Montagne to amend and BBI to move to strike the amended affirmative defenses.

Relevant to this practical and procedural problem is the fact that, in the brief in opposition to BBI's motion to strike her affirmative defenses, Diane Montagne articulates certain facts that she alleges support the remaining affirmative defenses. The Court therefore construes Diane Montagne's brief in opposition to BBI's motion to strike as a brief setting forth the factual arguments she would present if she were given an opportunity to amend her affirmative defenses. The Second Circuit has approved of a district court exercising such discretion. See, e.g., Monahan, 214 F.3d at 283 (stating that district court had discretion to entertain an affirmative defense when raised in a motion for summary judgment by construing the motion as one to amend the defendant's answer). Based upon the facts and arguments set forth in Mrs. Montagne's brief in opposition to BBI's motion to strike, the Court will determine whether it would be futile to grant Diane Montagne leave to amend each of the remaining affirmative defenses.

### B. Waiver and/or Estoppel

#### 1. Standards

"A waiver is a voluntary relinquishment of a known right, and can be express or implied." Anderson v. Cooperative Ins. Cos., 179 Vt. 288, 291, 895 A.2d 155, 159 (2006) (citations omitted). As to express waiver, the facts, as pled, must show that a party has "expressly waived" its rights. Id.

> To succeed on an implied waiver theory, plaintiff must show some act or conduct on the part of defendant[ ] that was unequivocal in character. As other jurisdictions have recognized, implied waiver blurs the line between the doctrines of waiver and estoppel. Thus, to prove implied waiver, a plaintiff must show that she honestly and reasonably believed, based on the defendant's conduct, that the defendant would forego asserting some right to which it was otherwise entitled, and that the plaintiff acted to her detriment in reliance on that belief.

Id. (citations omitted).

"The test to determine whether a party is estopped from a claim is simple: whether, in all the circumstances of the case, conscience and duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct." Greenmoss Builders, Inc. v. King, 155 Vt. 1, 7, 580 A.2d 971, 974 (1990) (quoting Neverett v. Towne, 123 Vt. 45, 55, 179 A.2d 583, 590 (1962)). The party invoking equitable estoppel must establish that:

> first, the party to be estopped [knows] the facts; second, the party being estopped [intends] that his conduct shall be acted upon or the acts must be such that the party asserting the estoppel has a right to believe it is so intended; third, the latter must be ignorant of the true facts; and finally, the party asserting the estoppel must rely on the conduct of the party to be estopped to his detriment.

Greenmoss, 155 Vt. at 7, 580 A.2d at 975.

2. The Parties' Arguments

BBI argues that Diane Montagne has asserted no facts to show express waiver. It also contends that she has raised no factual or legal issues on several of the necessary elements of implied waiver or estoppel. For instance, Mrs. Montagne points to no "unequivocal" conduct by BBI suggesting that terms of sale for the goods it sold would not be enforced going forward. BBI rejects Mrs. Montagne's suggestion that she believed she was not liable on the debt because she never signed a credit agreement and that she had a reasonable basis to believe that her ownership interest in the farm could not be attached to satisfy the farm's debt. BBI observes that Mrs. Montagne cites no actions BBI took that contradicted or repudiated the ongoing invoices stating the terms of sale or interest and amount of debt and, as a consequence, she could not show that she was ignorant of the true facts or relied on any representation to her detriment. BBI points out that the farm did not change its position: it simply continued accepting goods that kept the business afloat on the same terms (doc. # 292, pp. 10-11).

Mrs. Montagne responds that the testimony of John Whitney, BBI's Credit Manager between 1987 and 2000 or 2001, shows express waiver "of any right it may otherwise have had to hold Mrs. Montagne liable on the open accounts," because BBI chose to deliver product with the actual knowledge that "it had failed to obtain her consent to be on the accounts" (doc. # 297, p. 10). She goes on to say that BBI undertook unsuccessful attempts to procure her consent on the accounts "precisely because it knew of the separation and frail nature of the marriage [between Mr. and Mrs. Montagne] at the time it chose to go forward and deliver product on open accounts, without the consent or agreement of Mrs. Montagne." Id. She adds that BBI's statement that her "ownership interest" was not subject to the farm's debt misses the point, because it was not seeking to attach her "ownership interest" in the farm, but to hold her "personally liable," a right it waived by taking "the unequivocal acts, over the years, of delivering product in the actual knowledge that she had declined to be responsible for the accounts." Id.

3. Analysis

Mrs. Montagne relies on the testimony of Mr. Whitney to show express waiver. In his testimony, Mr. Whitney stated that it was BBI's intention to procure Mr. and Mrs. Montagne's signatures on two promissory notes and a credit application in 1995; that BBI expected that they would both sign; and that BBI "had no reason to believe that they wouldn't [sign], actually." Asked if he knew whether both of them had signed, he answered "I don't believe they did." Asked if BBI "chose to make the deliveries on that account, regardless," he answered "We delivered the product anyway" (doc. # 305, pp. 52-53). Mr. Whitney had earlier explained that the reason BBI had wanted to include Mrs. Montagne's signature on those documents was because "there has to be a division at the time of the divorce . . . is why we were trying to get some documentation, where we had previously had minimal documentation on the account." Id., p. 47, 56. Significantly, Mr. Whitney's testimony does not indicate that BBI failed to obtain Mrs.

7

Montagne's "<u>consent</u>," or that Mrs. Montagne <u>refused</u> to sign these documents. This is simply a conclusion reached by Mrs. Montagne, not a "fact." Mr. Whitney stated that he did not know whether Diane Montagne was willing or unwilling to sign the documents, and that the reason he never obtained her signature was because "she was never physically present to sign the documents when [he] was there." <u>Id.</u> p. 57.

These facts do not constitute an express waiver of BBI's right to hold Mrs. Montagne liable on the Montagne accounts. There is no rational, logical, or legal relationship between Mrs. Montagne not signing a credit application or promissory note in 1995, and an express waiver by BBI of its right to collect on open accounts over a decade later. In addition, Mr. Whitney's statement that he did not believe that Mrs. Montagne signed the documents, even though BBI delivered goods anyway, is not an express waiver. Mrs. Montagne attempts to fashion a cause and effect relationship between her not signing the credit application and promissory notes (her shorthand for not being liable on the BBI accounts at all) with BBI continuing to make deliveries, as constituting an express waiver. That logic is fatally flawed and therefore, amendment of this affirmative defense based on these facts would be futile.

As to implied waiver, Mrs. Montagne asserts no facts in her brief that would show that she "honestly and reasonably believed" that, based on BBI's conduct, it would forego asserting its right to collect the sums due on its accounts. She places an onus on BBI because of its "knowledge" of her separation from Mr. Montagne, but she does not connect the legal or factual dots to show how BBI having continued to deliver products, allegedly "without her consent" relates to her not signing a credit application or to her marital status; how that caused BBI to forego its rights; or how she acted to her detriment. It is not plausible that she believed that just because she did not sign a credit application in 1995, either BBI had waived its right to collect the debt from her or she had communicated her refusal to be liable on the BBI debt. This is particularly so since BBI continued to deliver, and the Montagne farm continued to accept, goods during a period of almost a decade after the date of that application and before BBI brought suit. Since adding these facts would still not present a sound or sufficient basis for this argument, the Court finds allowing Diane Montagne to amend the implied waiver affirmative defense would be futile.

Concerning the affirmative defense of estoppel, the facts and arguments set forth by Mrs. Montagne similarly show that amendment of this defense would be futile. Even if BBI knew that Mrs. Montagne had not signed the notes or credit application, those facts do not support the leap of logic that would lead to the conclusion that BBI knew that Mrs. Montagne was not liable on the open accounts and intentionally chose to deliver goods to the Montagnes, notwithstanding Mrs. Montagne's lack of liability. Mrs. Montagne gives no indication of how she relied on BBI's conduct to her detriment. In addition, the Court has already rejected Mrs. Montagne's position that her failure to sign the promissory notes and other documents necessarily prevents BBI from holding her liable for the debt (<u>see</u> doc. # 293, p. 6). In that regard,

8

this Court held, "Mrs. Montagne's position that she could share in the marital assets but not the marital debts is not logical, nor does it have support in the evidence before the Court or the case law pertinent to the question." Id. Therefore, allowing amendment of the estoppel argument would also be futile.

Accordingly, the Court strikes this affirmative defense of waiver and/or estoppel in toto.

### C. *Unclean Hands*

1. Standard

The doctrine of unclean hands "is guided by the maxim that he who comes into equity must come with clean hands. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standard of conduct is sufficient cause for the invocation of the maxim." Starr Farm Beach Campowners Ass'n, Inc. v. Boylan, 174 Vt. 503, 506, 811 A.2d 155, 160 (2002) (citations and quotation marks omitted). The defendant must claim that the plaintiff transgressed equitable standards of conduct; if the defendant does not do so, reliance on the unclean hands doctrine is unavailing. Id.

2. The Parties' Arguments

Mrs. Montagne's unclean hands defense is grounded upon BBI having presented "spurious documents" to the state court in the context of her motion seeking dissolution of the ex parte writ of attachment. Specifically, she asserts that "[i]t was not until several months after the attachment hearing [in state court], during the course of discovery, that Mrs. Montagne was able to establish that the documents bearing her name and presented to the Court had no counterparts in the original BBI files, and that in fact the originals were in Michael Montagne's name only" (doc. # 297, pp. 10-11). She adds that she has been "deprived of the free use of her properties. . . due to BBI's lack of candor with the Franklin Superior Court." Id. p. 11.

BBI maintains that "Mrs. Montagne has not asserted any facts to put equitable defenses in dispute, therefore the affirmative defenses of express waiver. . . implied waiver, estoppel, unclean hands, [and] failure to mitigate. . . cannot succeed" (doc. # 292, p. 12).

3. Analysis

The facts relied on by Mrs. Montagne purportedly in support of her unclean hands affirmative defense persuade the Court that amendment of this defense would be futile. Her argument hearkens back to her theory that BBI was able to secure the ex parte writ of attachment in state court by improperly relying upon documents that contained a number of irregularities, including two promissory notes that BBI knew to have been paid in full, a security agreement that was unrelated to the debt claimed, and documents bearing her name (such as the credit application) with the knowledge that BBI had attempted but failed to procure her signature on them. See Diane Montagne Counterclaim, doc. # 268, ¶¶ 2-24, 64-77. This theory is precluded by the law of the case doctrine, which "comes into play only with respect to issues

9

previously determined" in the case. Quern v. Jordan, 440 U.S. 332, 347 n.18 (1979). See doc. # 307, pp. 5-7.

In an earlier motion for summary judgment in this adversary proceeding, Mrs. Montagne raised a number of arguments challenging her liability to BBI for goods delivered to the Montagne farming operation (doc. # 160). Among her arguments was that she signed none of the documents that would make her liable, including the two promissory notes that she mentions again here. In the memorandum of decision denying Mrs. Montagne's motion, the Court found that she had made admissions that she had an interest in the farming operation, and her theory that she should share in the marital assets but not the marital debts was not defensible. The Court soundly rejected her position that the fact that had not signed certain enumerated documents was sufficient to justify a determination that she could not be found liable to BBI (doc. # 293, p. 6). Even if Mrs. Montagne now centers her argument on the allegedly improper credit application (a document that she did not challenge at all in her motion for summary judgment), that would not change the result that the law of the case applies, since that doctrine covers issues decided by necessary implication as well as those decided explicitly. In re Cummings, 381 B.R. 810, 823 (S.D. Fla. 2007). The law of the case operates to "create efficiency, finality, and obedience within the judicial system," Allapattah Servs., Inc. v. Exxon Corp., 372 F. Supp. 2d 1344, 1363 (S.D. Fla. 2005), and to allow piecemeal challenges to the ex parte writ of attachment, first based on one or two documents, then based on others, would be a waste of judicial resources. See also doc. # 225, p. 6.

This point has even greater impact because, as Mrs. Montagne admits, all of the allegedly "spurious" documents had been submitted to the state court in support of BBI's motion for the writ and the hearing on Mrs. Montagne's motion to dissolve the writ. The state court reviewed the documents. While Mrs. Montagne asserts that BBI never advised the state court of BBI's repeated and unsuccessful efforts to procure her signature on any of those documents (doc. # 270, ¶ 67), she had ample opportunity to bring this fact to the court's attention at the hearing. Additionally, Mr. Whitney's testimony, upon which Mrs. Montagne now relies to show that Mrs. Montagne never consented to be liable on the BBI accounts, does no such thing.

As this Court ruled in this proceeding when dismissing Michael Montagne's Counterclaims,

> Both the state court and this Court have addressed numerous challenges by both Michael and Diane Montagne to the writ of attachment. Both courts found, certainly implicitly if not explicitly by rejecting the many arguments proffered by the Montagnes, that there was no hint that BBI had, in any way, abused the judicial process by seeking the writ. See doc. ## 115, 225, 293.

(doc. # 307, p. 13). Therefore, to the extent that Mrs. Montagne's unclean hands argument rests on allegedly spurious documents and an alleged lack of candor by BBI, this Court has already ruled, on more than one occasion, that the process by which BBI sought the writ, and the state court granted the writ, were not improper. That argument is without merit.

10

Finally, even if the facts as alleged by Mrs. Montagne were true, they would not be sufficient to establish the affirmative defense of unclean hands under Vermont law, as the facts pled fail to allege any transgression of an equitable standard of conduct. Therefore, amendment of this affirmative defense would be futile and the Court grants BBI's motion to strike it based upon insufficient pleading.

### D. *Failure to Mitigate Damages*

1. Standard

The Vermont Supreme Court has written:

> Under general contract law, "the nonbreaching party in a contract dispute has a duty to make reasonable efforts to mitigate damages arising from the breach." Estate of Sawyer v. Crowell, 151 Vt. 287, 294, 559 A.2d 687, 692 (1989). This duty to mitigate has alternately been referred to as the doctrine of "avoidable consequences," in recognition of the fact that an injured party should not be able to recover damages for loss that could have been avoided with reasonable effort. Reid v. Mutual of Omaha Ins. Co., 776 P.2d 896, 904 n. 8 (Utah 1989); see also 3 E. Farnsworth, Farnsworth on Contracts § 12.12, at 220 (1990) (discussing preclusion of recovery for avoidable losses); Restatement (Second) of Contracts § 350 comment b (1981) (no recovery for reasonably avoidable losses).

O'Brien v. Black, 162 Vt. 448, 452, 648 A.2d 1374, 1376 (1994).

2. The Parties' Arguments

Mrs. Montagne argues that she moved off the farm in October 2006; one of the BBI principals was aware of that fact; BBI had known for years that the marriage between Mr. and Mrs. Montagne was uncertain and had sought her signature on account documents because of that fact; however, for more than a year afterward, BBI continued to make deliveries to the farm in the belief that Mrs. Montagne would be liable for the debt, but never contacted her to confirm that fact or to see if she would consent to become liable on the accounts – which were practical and simple steps that a reasonable creditor would have taken if it made deliveries in reliance upon her payment of the bills for goods delivered (doc. # 297, p. 11).

BBI responds that

> the defense of mitigation suggests there was an alternative course of action by BBI that would have cut its losses to the benefit of both parties. It applies, for example, where a merchant has an alternative market for goods that its customer ordered but could not accept. Cf. 9A V.S.A. § 706 (seller's resale of goods). It is of no avail where the only suggestion seems to be that BBI should have cut off the farm's supplies sooner. Mitigation does not include the duty to prevent the other party's breach.

(doc. # 292, p. 11-12) (citing Sheldon v. Northeast Developers, Inc., 127 Vt. 15, 18 (1968)).

3. Analysis

Diane Montagne suggests that once BBI knew that the Montagnes' marriage was on shaky ground, it also should have known that this could have had an impact on the Montagnes' business affairs and therefore BBI should not have continued to deliver goods to the farm should without verifying Mrs. Montagne intended to remain liable on the BBI debt. This reasoning is specious, as BBI had no duty to contact Mrs. Montagne to determine if she was liable on the debt; Mrs. Montagne's liability is not determined by

11

her desire (or lack of desire) to be liable. In addition, this argument fails because the Court has already rejected, on summary judgment, the fundamental premise here, namely that Mrs. Montagne is not liable on the BBI debt, see doc. # 293, pp. 5 – 8. Based on that determination, the predicate for her failure to mitigate damages affirmative defense (that she was not liable because BBI did not get her acquiescence to liability before delivering additional goods) is not viable and the affirmative defense fails. Also, as BBI notes, failure to mitigate damages does not impose on BBI the duty to prevent the Montagnes' breach. Accordingly, amendment of this affirmative defense would be futile and BBI's motion to strike the failure to mitigate damages affirmative defense is granted. See also doc. # 115, p. 5.

### E. Homestead Exemption

1. Standard

The Vermont statutes provide:

> The homestead of a natural person consisting of a dwelling house, outbuildings and the land used in connection therewith, not exceeding $125,000.00 in value, and owned and used or kept by such person as a homestead together with the rents, issues, profits, and products thereof, shall be exempt from attachment and execution except as hereinafter provided.

27 V.S.A. § 101 (2009).

2. The Parties' Arguments

Mrs. Montagne asserts that she is "fully entitled to claim an exemption in her homestead, an issue that should be addressed at trial depending on liability findings. BBI is not entitled to attach her homestead" (doc. # 297, p. 11).

> BBI contends that if Mrs. Montagne means to suggest by this affirmative defense
>
> that the propriety of BBI's non-possessory attachment once again be examined in the course of trial on BBI's claim, BBI simply responds that the attachment has been upheld in both state and bankruptcy court. The application of the homestead exemption will not be in issue unless BBI is forced to levy on that attachment to satisfy judgment on its claim

(doc. # 292, p. 13).

3. Analysis

The Court finds BBI's arguments in support of its motion to strike this affirmative defense, with respect to vacatur of the BBI attachment, to be persuasive. The propriety of the ex parte writ of attachment has been upheld by both this Court and the state court. See doc. ## 115, 225, 293, 307. Thus, to the extent Diane Montagne parades this affirmative defense before the Court to present yet another challenge to BBI's attachment, it is to no avail, and in that regard the motion to strike is granted. However, that is the not the end of the analysis.

As BBI has, in effect, acknowledged at the end of the above-cited contention, if (i) the Court determines Diane Montagne is liable for the BBI debt, and (ii) BBI seeks to levy on the attachment against property Diane Montagne asserts to be her homestead property, the merits of the homestead exemption

claim will be squarely at issue. Diane Montagne has set forth sufficient facts to pursue this affirmative defense if and when those two conditions arise. Thus, the Court denies BBI's motion to dismiss Diane Montagne's homestead exemption affirmative defense, and grants Mrs. Montagne the right to litigate the issue in this proceeding if and when it is at issue.

### F. Attorney's Fees

BBI has renewed its request for attorney's fees, "[g]iven the multiple pleadings that . . . Diane Montagne has filed in this bankruptcy without addressing the basic infirmities that the Court has clearly identified" in its March 26, 2009 Order in A.P. # 08-1022, doc. # 98. (doc. # 292, p. 3). Diane Montagne counters that the request should be denied because BBI has not briefed its right to recover attorney's fees, has not established a prima facie justifying this sanction, and has not cited legal authority that justify an award of attorney's fees (doc. # 297 pp. 11-12).

Although the litigation in this case has been complicated quite dramatically by the pleadings filed by Diane Montagne, the Court will grant BBI's motion to impose sanctions on Diane Montagne only if BBI has thoroughly complied with the pertinent substantive, procedural, and due process requirements. After carefully considering both the conduct of Diane Montagne and her attorney, and the arguments presented in favor of and against an award of attorney's fees, the Court denies BBI's motion based upon three factors. First, the imposition of sanctions, including an award of attorney's fees to opposing counsel, generally requires a showing of bad faith, and BBI has not established bad faith. See Gollomp v. Spitzer, 568 F. 3d 355, 368 (2d Cir. 2009). Second, while it is clear BBI incurred legal fees in examining – and discerning the legal import of – of Diane Montagne's sixteen affirmative defenses, and in filing this motion to dismiss, that is part of the litigation process and is not adequate to warrant an award of sanctions. To prevail in a motion for sanctions under 28 U.S.C. § 1927, BBI must demonstrate that Diane Montagne's attorney acted to "unreasonably and vexatiously" multiply the proceedings in this case, and to obtain an award of sanctions under Bankruptcy Rule 9011, BBI must show it gave opposing counsel the requisite notice set out in that rule. See In re Rising Tide Enterprise, LLC, 2010 WL 174323 at * 2-3 (W.D.N.Y. Jan. 15, 2010). BBI has not shown that it has satisfied these requirements for an award of sanctions under either § 1927 or Rule 9011, as due process requires. Third, Mrs. Montagne took the initiative to withdraw most of her affirmative defenses based on the Court's recent rulings, see doc. # 309, suggesting to the Court that she and her attorney are making a diligent effort to narrow the issues and avoid litigation of frivolous claims. While not sufficient in and of itself to defeat BBI's request for attorney's fees, this remedial action factor also weighs in favor of denying BBI's motion.

### CONCLUSION

Based on the foregoing, the Court grants BBI's motion to strike Diane Montagne's affirmative defenses of waiver and/or estoppel, unclean hands, and failure to mitigate damages. The Court denies BBI's

motion to strike Diane Montagne's affirmative defense of homestead exemption; Diane Montagne may introduce evidence with respect to that affirmative defense if the Court grants BBI judgment against Diane Montagne and BBI seeks to enforce that judgment against property Diane Montagne claims to be protected by the homestead exemption. The Court also denies BBI's request for attorney's fees.

      This constitutes the Court's findings of fact and conclusions of law.

*[signature]*

February 1, 2010  
Rutland, Vermont

Colleen A. Brown  
United States Bankruptcy Judge