*Formatted for Electronic Distribution*                                    *Not for Publication*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

_____

In re:

    **Michael F. Montagne,**
            **Debtor.**

_____

**Bourdeau Brothers, Inc.,**
        **Plaintiff,**
        **v.**
**Michael F. Montagne, Diane Montagne,**
**and Montagne Heifers, Inc.,**
           **Defendants.**

_____

**Chapter 12 Case**
**# 08-10916**

Filed & Entered
On Docket
February 8, 2010

**Adversary Proceeding**
**# 08-1024**

*Appearances:*      *James Spink, Esq. and Mary Peterson, Esq., for Bourdeau Brothers, Inc.*
                    *John R. Harrington, Esq. and Jess T. Schwidde, Esq., for Michael F. Montagne*

## MEMORANDUM OF DECISION
### GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE MICHAEL MONTAGNE'S AFFIRMATIVE DEFENSES AND DENYING PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES

        Plaintiff Bourdeau Brothers, Inc. ("BBI") filed a complaint in Vermont state court against Michael F. Montagne (the "Debtor"), his wife Diane Montagne, and Montagne Heifers, Inc. ("MHI"), seeking payment for feed, grain, and other farm supplies sold to Michael and Diane Montagne for use in their farming operations (doc. # 4). The original complaint asserted three causes of action: the first sought payment on two promissory notes, while the second and third sought payment on open accounts BBI had with Michael and Diane Montagne. Id. BBI subsequently filed an amended complaint (doc. # 40), which added an unjust enrichment cause of action. Id. After that proceeding was removed to this Court, BBI filed a second amended complaint (doc. # 263), and Debtor-Defendant Michael Montagne responded by filing an answer, affirmative defenses and counterclaim (the "Affirmative Defenses") (doc. # 270). BBI filed a motion to strike Michael Montagne's Amended Affirmative Defenses and requested reimbursement of the reasonable attorney's fees it had incurred in bringing the motion to dismiss (doc. # 291). For the reasons that follow, the Court grants in part and denies in part BBI's motion to strike the Debtor's Affirmative Defenses, and denies BBI's request for attorney's fees.

### JURISDICTION

        This Court has jurisdiction over this adversary proceeding and this motion to dismiss under 28 U.S.C. § 1334, 28 U.S.C. § 157(b)(2)(B) and (C), and the parties' stipulation to this Court's entry of a final judgment on the causes of action relating to this Title 11 case. See doc. # 205, pp. 2-3.

## PROCEDURAL HISTORY

BBI filed its complaint in December 2007, under the caption of <u>BBI v. Michael Montagne, Diane Montagne, and Montagne Heifers, Inc.</u>, # S610-07 FC. Shortly thereafter, BBI moved for an <u>ex parte</u> writ of attachment against the defendants' property (doc. # 6), which the state court granted (doc. # 7). Michael Montagne filed an answer, affirmative defenses, and counterclaim (doc. # 18); BBI later successfully moved to amend its complaint (doc. # 32, 36, 40),[1] and extensive litigation on a variety of issues ensued in state court. On October 2, 2008, Michael Montagne sought protection under chapter 12 of the Bankruptcy Code and filed a notice of removal of the BBI lawsuit (doc. # 1). In December 2008, Michael Montagne moved to dissolve the <u>ex parte</u> writ of attachment in favor of BBI (doc. # 186); BBI opposed that motion (doc. # 197). After additional briefing (docs. # 202, 207), this Court denied the motion (doc. # 225).

On March 26, 2009, BBI moved to amend its complaint a second time (doc. # 245, refiled a few days later as doc. # 253) to remedy certain "factual inaccuracies" contained in its earlier amended complaint. BBI explained that the previous amended complaint (doc. # 40) referred to the terms of two notes originally underlying its account with the Montagnes and that "BBI became aware that the notes themselves were paid off, and that the amounts shown due in its ledgers on the 'note account' were for subsequent purchases under invoice." <u>Id.</u> The second amended complaint clarified that the promissory notes were no longer in issue. <u>Id.</u>

Michael Montagne filed an amended answer, affirmative defenses, counterclaim, third party complaint, and jury demand on April 4, 2009 (doc. # 258); however, this filing occurred before the Court had granted BBI's motion to amend. Michael Montagne filed his answer to the second amended complaint, with affirmative defenses and counterclaim, on May 7, 2009 (doc. # 270), which superseded the previously-filed amended pleading (doc. # 258). He listed the following Affirmative Defenses: (A) unclean hands; (B) laches; (C) statute of limitations; (D) breach of contract by Plaintiff, including breach of contractual duty of good faith and fair dealing; (E) estoppel; (F) waiver; (G) duress; (H) illegality; (I) payment and/or set-off; (J) homestead exemption; (K) statute of frauds; (L) failure to state a claim upon which relief may be granted, including but not limited to, any claim for attorney's fees and costs of collection; (M) acquiescence; (N) failure to mitigate damages and failure to act in a commercially reasonable manner; (O) usury, in regard to charging interest in excess of that permitted by 9 V.S.A. 41a; and (P) violation of the Vermont Licensed Lender Act (doc. # 270, ¶ 32). BBI filed a motion to dismiss Michael Montagne's amended counterclaims (doc. # 273).  The Court granted that motion (doc. # 307). To further narrow the issues, BBI had also filed the instant motion to strike the Debtor's affirmative defenses (doc. # 291). Michael Montagne filed an objection to BBI's motion to strike (doc. # 299) and

---

[1] Michael Montagne never answered BBI's amended complaint.

BBI filed a reply (doc. # 303). In his objection to BBI's motion to strike his affirmative defenses, Michael Montagne withdrew two and a half of his affirmative defenses: he withdrew the breach of contract (D) and duress (G) affirmative defenses in their entirety, and withdrew part of the failure to mitigate (N) affirmative defense, leaving intact the portion of that defense focused on commercial unreasonableness (doc. # 299 n.2).

On February 1, 2010, the Court issued a decision granting in part and denying in part BBI's motion to strike Diane Montagne's affirmative defenses (doc. # 318). Apparently in response to that decision, on February 2, Michael Montagne filed an "Expedited Motion to Amend Answer to Second Amended Complaint, Affirmative Defenses, Counterclaim and Jury Demand," where he proposed to add "certain allegations supporting Mr. Montagne's affirmative defenses in paragraph 31 of the Answer" (doc. # 320, p. 1). BBI filed an opposition to the expedited motion on February 2 (doc. # 321), and the Debtor filed a reply (doc. # 322). On February 4, 2010, the Court denied the Debtor's expedited motion to amend his affirmative defenses (doc. # 325).

DISCUSSION

## I.   Standard for Motion to Strike and Controlling Law

Fed. R. Bankr. P. 7012(f) incorporates Fed. R. Civ. P. 12(f) and addresses motions to strike; it provides:

> Upon motion . . . made by a party . . . or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed. R. Bankr. P. 7012(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief." Donnelly v. Commonwealth Fin. Sys., Inc., 2008 WL 762085, * 4 (M.D. Pa. Mar. 20, 2008).

In Tracy v. NVR, Inc., 2009 WL 3153150 (W.D.N.Y. Sept. 30, 2009), the court set out the pleading standard for affirmative defenses as well as motions to strike affirmative defenses, concluding that the same standard applies to both:

> Rule 8(c) of the Federal Rules of Civil Procedure governs the pleading of affirmative defenses. "Affirmative defenses are . . . subject to the general pleading requirements of Rules 8(a) [and] 8(e) . . ., generally requiring only a short and plain statement of the facts." Saratoga Harness Racing, Inc. v. Veneglia, 1997 WL 135946, *6 (N.D.N.Y.1997) (quoting Instituto Nacional De Comercializacion Agricola v. Continental Illinois Nat'l Bank & Trust Co., 576 F.Supp. 985, 988 (N.D.Ill.1983)). . . .
>
> Although motions to strike affirmative defenses are "generally disfavored," Barber v. RLI Ins. Co., 2008 WL 5423106, *5 (N.D.N.Y.2008) (citing Quanta Specialty Lines Ins. Co. v. Investors Capital Corp., 2008 WL 1910503, *4 (S.D.N.Y.2008)), affirmative defenses that contain only "bald assertions" unaccompanied by supporting facts will be stricken. Schecter v. Comptroller of City of New York, 79 F.3d 265, 270 (2d Cir.1996) (striking affirmative defense; noting that affirmative "defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no ef-

ficacy"). Indeed, the[Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)] plausibility standard applies with equal force to a motion to strike an affirmative defense under Rule 12(f). Aspex Eyewear, Inc. v. Clariti Eyewear, Inc., 531 F.Supp.2d 620, 622 (S.D.N.Y.2008). See also FSP, Inc. v. Societe Generale, 2005 WL 475986, *8 (S.D.N.Y.2005) ("[a] motion to strike an affirmative defense, pursuant to Fed.R.Civ.P. 12(f), is also governed by the same standard applicable to a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)"); Solvent Chem. Co. v. E.I. Dupont De Nemours & Co., 242 F.Supp.2d 196, 212 (W.D.N.Y.2002) ("[t]he standard for striking an affirmative defense is the mirror image of the standard for considering whether to dismiss for failure to state a claim").

Id. at * 7. Although Twombly was very recently decided, this standard is not new with respect to affirmative defenses. In Saks v. Franklin Covey Co., 316 F.3d 337, 350 (2d Cir. 2003), the Second Circuit approvingly cited Satchell v. Dilworth, 745 F.2d 781, 784 (2d Cir. 1984), which held that a general denial of allegations is insufficient to plead an affirmative defense.

"The majority of cases applying the Twombly pleading standard to affirmative defenses and striking those defenses have permitted the defendant leave to amend." Hayne v. Green Ford Sales, Inc., __ F. Supp. 2d __, 2009 WL 517779 *4 (D. Kan. Dec. 22, 2009). Fed. R. Civ. P. 15, incorporated into Fed. R. Bankr. P. 7015, instructs that leave to amend pleadings "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Notwithstanding this liberal standard, a court may deny leave to amend where there has been undue delay or bad faith on the moving party's part, prejudice to the non-movant, or where leave would be futile. See Monahan v. New York City Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). "If the underlying facts or circumstances relied upon by a [party] may be a proper subject of relief [s]he ought to be afforded an opportunity to test [her] claim on the merits." Foman, 371 U.S. at 182. Where there is no merit in the proposed amendments, leave to amend should be denied. See Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990). The circuit has found that granting leave to amend would be futile if it appears that a party cannot address the deficiencies identified by the court and allege facts sufficient to support the claim. Joblove v. Barr Labs., Inc., 466 F.3d 187, 220 (2d Cir. 2006).

All of Michael Montagne's affirmative defenses are based on state law. Accordingly, state law must guide this Court's analysis and determination of the issues. See Butner v. U.S., 440 U.S. 48, 54 (1979).

## II.     Application

### A.  *Initial Procedural Issue*

Michael Montagne pled his affirmative defenses as "bald assertions," in list form unaccompanied by supporting facts (doc. # 270, ¶ 32). In this format, the affirmative defenses are pled too conclusorily to give BBI fair notice of the grounds upon which they rest, and do not comport with Fed. R. Civ. P. 8 or the Twombly pleading standard. See Tracy, 2009 WL 3153150 at * 7. Ordinarily, under these circumstances, the Court would be inclined to grant BBI's motion to strike the affirmative defenses and then grant Mi-

chael Montagne leave to amend them to assert the requisite supporting facts. However, trial on BBI's

complaint is only one week away, and that is not enough time for Michael Montagne to amend and BBI to

move to strike the again-amended affirmative defenses.

Relevant to this practical and procedural problem is the fact that, in the brief in opposition to

BBI's motion to strike his affirmative defenses, Michael Montagne refers to certain facts and makes other

arguments that he alleges support his affirmative defenses. The Court therefore construes Michael Mon-

tagne's brief objecting to BBI's motion to strike as a brief setting forth the factual and legal arguments he

would present if he were given an opportunity to amend his affirmative defenses. The Second Circuit has

approved of a district court exercising such discretion. See, e.g., Monahan, 214 F.3d at 283 (stating that

district court had discretion to entertain an affirmative defense when raised in a motion for summary

judgment by construing the motion as one to amend the defendant's answer). Based upon the facts and

arguments set forth in Mr. Montagne's brief objecting to BBI's motion to strike, the Court will determine

whether it would be futile to grant him leave to amend his affirmative defenses.

### B.  Waiver (F), Estoppel (E), Acquiescence (M)

#### 1.  Standards

"A waiver is a voluntary relinquishment of a known right, and can be express or implied." Ander-

son v. Cooperative Ins. Cos., 179 Vt. 288, 291, 895 A.2d 155, 159 (2006) (citations omitted). As to ex-

press waiver, the facts, as pled, must show that a party has "expressly waived" its rights. Id.

> To succeed on an implied waiver theory, plaintiff must show some act or conduct on the
> part of defendant[ ] that was unequivocal in character. As other jurisdictions have recog-
> nized, implied waiver blurs the line between the doctrines of waiver and estoppel. Thus, to
> prove implied waiver, a plaintiff must show that she honestly and reasonably believed,
> based on the defendant's conduct, that the defendant would forego asserting some right to
> which it was otherwise entitled, and that the plaintiff acted to her detriment in reliance on
> that belief.

Id. (citations omitted).

"The test to determine whether a party is estopped from a claim is simple: whether, in all the cir-

cumstances of the case, conscience and duty of honest dealing should deny one the right to repudiate the

consequences of his representations or conduct." Greenmoss Builders, Inc. v. King, 155 Vt. 1, 7, 580

A.2d 971, 974 (1990) (quoting Neverett v. Towne, 123 Vt. 45, 55, 179 A.2d 583, 590 (1962)). The party

invoking equitable estoppel must establish that:

> first, the party to be estopped [knows] the facts; second, the party being estopped [intends]
> that his conduct shall be acted upon or the acts must be such that the party asserting the es-
> toppel has a right to believe it is so intended; third, the latter must be ignorant of the true
> facts; and finally, the party asserting the estoppel must rely on the conduct of the party to
> be estopped to his detriment.

Greenmoss, 155 Vt. at 7, 580 A.2d at 975.

The Court can find no separate affirmative defense of "acquiescence" in Vermont. The cases generally pair "waiver or acquiescence" together, meaning that a party waives a challenge to something by failing to object to it. See In re Lakatos, 182 Vt. 487, 493, 939 A.2d 510, 515 (2007) (discussing "waiver or acquiescence" where party waived a challenge to a committee procedure by failing to raise an objection to it).

### 2. The Parties' Arguments

BBI argues that Michael Montagne has asserted no facts to show express waiver, as he simply points to BBI's alleged practice of settling accounts. It also contends that the Debtor has raised no factual or legal issues on several of the necessary elements of implied waiver or estoppel. For instance, even accepting his assertion of prior workouts, Mr. Montagne points to no "unequivocal" conduct by BBI suggesting that terms of sale for the goods it sold would not be enforced going forward, or actions that would contradict invoices and statements that stated the terms of sale, interest, and amounts of debt. As such, Mr. Montagne cannot show that he was ignorant of the true facts or relied on any representations to his detriment; nor did he change his position, since the farm continued to accept goods (doc. # 291, p. 9).

Mr. Montagne responds, concerning express waiver, that "a commitment can be unequivocal without being express. Otherwise, there would be no such thing as implied waiver." He adds that whether BBI "impliedly waived its purported contractual rights to collect 18% interest or to demand payment in full immediately upon Ag Venture's refusal to complete the proposed refinancing involves factual issues that cannot be determined in the pleadings." He goes on to say that the "true facts" at issue concerning the estoppel defense are not printed terms of sale but BBI's position with regard to its rights and its intention regarding enforcement of those rights, and Debtor's change of position is properly measured by comparing what he would have done had he known of BBI's intentions (doc. # 299, p. 7).

Mr. Montagne has asserted no argument in opposition to BBI's motion to strike his affirmative defense of acquiescence.

### 3. Analysis

It is incumbent on the Court to point out a deficiency that permeates many aspects of Mr. Montagne's brief. In order to defeat BBI's motion to strike his affirmative defenses, Mr. Montagne's opposition must set forth facts that would support the affirmative defenses, as indicated in Tracy v. NVR, supra. While he does refer to some facts in his brief, he devotes much more time and effort challenging BBI's alleged facts or arguments. In other words, he disputes the merits of BBI's claims rather than providing facts to support the affirmative defenses. Since he has the burden of proof, merely criticizing BBI's position is not sufficient ground to support his affirmative defenses, to oppose striking his affirmative defenses, or to warrant leave to amend. See Aspex Eyewear, 531 F. Supp. 2d at 623 (holding that defendant's affirmative defenses "fail to meet the nominal requirements of notice pleading under Fed. R. Civ.

P. 8a. [The defendant] merely asserts these claims . . . without alleging even general facts to support them. In fact, [the defendant] asserts <u>no</u> facts, nor does [it] even refer to the elements of the various affirmative defenses. Mere conclusory assertions are not sufficient. . .").

As to express waiver, Mr. Montagne's statement that "a commitment can be unequivocal without being express" is completely irrelevant and uninformative; it fails to identify what he alleges the express waiver to be. The Court finds the Debtor has waived his opportunity to oppose BBI's motion to strike the express waiver affirmative defense. <u>See</u> <u>In re Montagne</u>, __ B.R. __, 2009 WL 5125280 at *4 (Bankr. D.Vt. Dec. 18, 2009) (citing <u>Norton v. Sam's Club</u>, 145 F.3d 114, 117 (2d Cir.1998) (holding that issues "not sufficiently argued in the briefs are considered waived" and normally are not addressed on appeal); <u>American Tissue, Inc. v. DLJ Merchant Banking Partners, II, L.P.</u>, 2006 WL 1084392 at *6 (S.D.N.Y.Apr.20, 2006) (applying <u>Norton</u> rule to district courts); <u>Fidelity Mortg. Group v. Mulvey</u>, 2003 WL 25745703 *1 (Vt. May Term 2003) ("Briefs that do not set forth clear and cogent arguments are inadequate to aid our review, and we do not entertain arguments that are not adequately briefed.")).

Concerning implied waiver, Mr. Montagne's point of reference is whether BBI impliedly waived its rights to collect a certain amount of interest and demand payment. However, other than questioning BBI's facts, he fails to set forth facts supporting this affirmative defense. Accordingly, he has waived this affirmative defense as well.

With regard to estoppel, Mr. Montagne's focus is once again "BBI's position with regard to its rights and its intention with regard to enforcement of such rights." He then extrapolates from this that the critical change in position at issue is what he would have done differently if he had known of BBI's intentions. But he makes no allegation concerning what BBI's intentions were, how he discerned its intentions, or what his change of position was. His argument is vague, unsupported, and does not allege facts that would establish that the four <u>Greenmoss</u> elements of estoppel are met.

Finally, because Mr. Montagne has not briefed the issue of acquiescence, he has waived the argument against striking this affirmative defense.

Accordingly, the Court grants BBI's motion to strike the affirmative defenses of waiver, estoppel, and acquiescence.

### C. Unclean Hands (A)

1. <u>Standard</u>

The doctrine of unclean hands "is guided by the maxim that he who comes into equity must come with clean hands. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standard of conduct is sufficient cause for the invocation of the maxim." <u>Starr Farm Beach Campowners Ass'n, Inc. v. Boylan</u>, 174 Vt. 503, 506, 811 A.2d 155, 160 (2002) (citations and quotation

marks omitted). The defendant must claim that the plaintiff transgressed equitable standards of conduct; if the defendant does not do so, reliance on the unclean hands doctrine is unavailing. Id.

2. The Parties' Arguments

BBI maintains that Mr. Montagne has not asserted any facts to show unclean hands (doc. # 291, p. 10).

Mr. Montagne's response (doc. # 299, pp. 7-8) is that BBI has made a conclusory statement that the debtor has not alleged any willful act that transgresses equitable standards of conduct, and that he has, in fact, alleged such acts. He cites paragraphs 50-57 from the counterclaim section of his answer to the second amended complaint (doc. # 270) as constituting those facts. Paragraphs 50-52 allege that, "upon information and belief," BBI credited regular monthly payments to lower interest accounts and no payments were made to account # 203 after May 2005, and BBI charged new grain purchases to account # 203 in July 2004, accruing 18% interest, although account # 205 accrued interest at 9%, so as to maximize its claim; and BBI, without notice or agreement, charged interest on interest on account # 203 in 2007 and by dividing one account into two accounts, which had already included interest. Id. ¶¶ 50-52. Paragraphs 53-57 provide that: the principal balance owed includes an 18% interest rate to which Mr. Montagne had not agreed, and which violates the Vermont usury statute; BBI failed to provide accurate account balances; because of BBI's conduct (of renaming accounts, shifting accounts, unilaterally charging interest, applying payments, changing the amount of payments) the amount due to BBI was not reasonably ascertainable; due to BBI's conduct, the Debtor had no basis to confirm that the amounts due, as shown on ledgers attached to BBI's proof of claim, were actual quantities sold, and the quantities alleged to have been sold, the calculation of prices and interest are incorrect; and that before filing its complaint, BBI learned that Mr. Montagne had refused to sign a fraudulent application with Ag Venture, another creditor, in which BBI's principals had a substantial interest so as to coerce Mr. Montagne to cooperate in the fraud which would have been in the financial interest of BBI's principals. Id. at ¶¶ 53-57.

3. Analysis

The facts relied on by Mr. Montagne to support his unclean hands affirmative defense persuade the Court that amendment of this defense would be futile. Even if the facts found in ¶¶ 50-57 were true, they would still not be sufficient to establish the affirmative defense of unclean hands under Vermont law, as the facts pled fail to allege willful acts that transgress equitable standards of conduct. The Debtor's grievances concern contract-related issues associated with his business transactions with BBI.

As indicated, the Debtor has already made a number of arguments based on the facts set forth in ¶¶ 50-57 and the Court has found that they were insufficient to present legal claims. Although the theory is different, the result is not. For instance, in the memorandum of decision granting BBI's renewed motion to dismiss the Debtor's amended counterclaim (doc. # 307), the Court wrote, in the context of dismissing

Mr. Montagne's breach of contract cause of action, that Mr. Montagne alleged no facts that would permit the Court to determine what terms he had agreed to with BBI, such as interest rates, receipt of products and prior workouts, that would provide a factual underpinning to his complaints about the application of payments and amount and rate of interest charged. Id. pp. 8-9. In the context of dismissing the Debtor's abuse of process cause of action set out in the counterclaim, the Court found that "the fact that BBI's principals had an ownership interest in Ag Venture and, apparently because of that, and only because of that extremely attenuated connection linking BBI to Ag Venture, BBI wished to coerce Mr. Montagne to enter a refinancing agreement with Ag Venture that would be mutually beneficial to both BBI and Ag Venture," presented an abuse of process theory that was facially implausible. Id. p. 13. When assessing the counterclaim's punitive damages cause of action, which was also grounded on BBI's principal's relationship with Ag Venture and the allegedly fraudulent loan transaction, the Court held that "BBI, acting through Ag Venture, [seeking] to coerce Mr. Montagne to engage in a fraudulent transaction, is not plausible." Id. p. 14. With regard to his argument about the equitable subordination cause of action, the Court found incredible the Debtor's theory that "it was to BBI's advantage to advance him many thousands of dollars to permit his farming operation to continue." Id. p. 16. Finally, in his objection to proof of claim arguments, Mr. Montagne proffered the same arguments he raises here: that BBI did not properly credit his payments, charged him inappropriate amounts of interest, and provided no basis to confirm the amounts due. There, the Court ruled that "Mr. Montagne will be precluded at trial from raising arguments based on the facts asserted in his Amended Counterclaim in response to BBI's objection to claim, and from raising substantive arguments against BBI's proof of claim based upon breach of contract, negligence, abuse of process, punitive damages, offset, or equitable subordination. He will retain only his right to challenge whether BBI has sustained its burden of proof with respect to its proof of claim." Id. pp. 17-18.

The facts as pled in paragraphs 50-57 of the counterclaim are not sufficient to present an unclean hands affirmative defense. The "facts" are not actually facts – they raise questions concerning BBI's accounting, but do not indicate, for example, that the Debtor maintained his own accounting that show BBI's figures to be wrong. These "facts" do not add up to an unclean hands defense. As a result, amendment of this affirmative defense would be futile and the Court grants BBI's motion to strike it.

### D. Payment and/or set-off (I)

1. Standard

Black's Law Dictionary (8th ed. 2004) defines offset as "[s]omething (such as an amount or claim) that balances or compensates for something else; setoff." "[A] setoff does not destroy the plaintiff's right of action" but "embodies a counterdemand based on some transaction entirely extrinsic to the plaintiff's

cause of action." <u>Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.</u>, 414 F.3d 325, 336 (2d Cir. 2005) (internal quotation marks omitted).

Payment is an affirmative defense, upon which the party asserting it has the burden of proof. <u>Trepanier v. Eldred</u>, 137 Vt. 108, 109, 400 A.2d 1001, 1002 (1979). <u>Black's Law Dictionary</u> (8th ed. 2004) defines payment as "performance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation."

2.  <u>The Parties' Arguments</u>

BBI maintains that the Debtor does not dispute that the farm did not pay for goods received; Mr. Montagne points to no damages that he suffered in continuing to receive those goods; and therefore the payment defense fails. As to setoff, BBI claims that all of the dealings between BBI and the Debtor related to the sale of goods and the Debtor articulates no defense based on an extrinsic transaction (doc. # 291, p. 12).

Michael Montagne asserts that "[w]hile debtor admits that he did not pay for all goods received, he does not admit that BBI has credited him with all payments received," and while payment is not a complete defense, "it is a defense to the extent of such payments" (doc. # 299 p. 8). He offers no argument against striking his setoff affirmative defense.

3.  <u>Analysis</u>

Here, the only argument the Debtor makes against striking the payment affirmative defense is to challenge BBI's arguments and deny its facts as pled: he does not set forth any facts that would entitle him to relief under this affirmative defense. For example, he states that he "did not admit" that BBI credited him with all of his payments. The missing "fact" is what payments he alleges were not credited. Moreover, to the extent that Mr. Montagne raises the same arguments here as he raised in support of his unclean hands affirmative defense, the Court finds them to be insufficient to defeat the motion to strike. Accordingly, amendment of this affirmative defense would be futile and the Court grants BBI's motion to strike the payment affirmative defense. Because he did not argue against striking his setoff affirmative defense, the Debtor has waived his argument and it, too, is stricken.

**E.  *Laches (B)***

1.  <u>Standard</u>

"Laches is the failure to assert a right for an unreasonable and unexplained period of time when the delay has been prejudicial to the adverse party, rendering it inequitable to enforce the right. Laches does not arise from delay alone, but from delay that works disadvantage to another." <u>In re Town Highway No. 20 of Town of Georgia</u>, 175 Vt. 626, 629, 834 A.2d 17, 23 (2003).

2.  <u>The Parties' Arguments</u>

BBI states that the Debtor does not assert any prejudice he suffered due to BBI's forbearance of collection on his account, and the Debtor's suggestion that BBI continued to deliver goods so as to compound the debt and gain an advantage in insolvency is nonsensical (doc. # 291, p. 10). Michael Montagne denies that he made this argument, clarifying that his laches defense "is based on the BBI delay contributing to the difficulty or impossibility of determining the amount actually due on BBI sales" (doc. # 299 p. 8).

3.  <u>Application</u>

Once again, the Debtor's argument against striking this affirmative defense consists of a challenge to BBI's assertions, supplemented by a conclusory statement, without any factual support, to explain what his laches theory is. Having provided no facts to satisfy the <u>Tracy v. NVR</u> standard, and only the most summary of legal arguments, the Court finds that Mr. Montagne has waived the argument against dismissal and grants BBI's motion to strike the laches affirmative defense.

### F.  *Failure to Act in a Commercially Reasonable Manner (N)*

1.  <u>Standard</u>

"Whether a sale is commercially reasonable must be determined on a case-by-case basis. . . . The burden is on the secured party to prove that the disposition of collateral was commercially reasonable and preceded by reasonable notice." <u>Federal Financial Co. v. Papadopoulos</u>, 168 Vt. 621, 623, 721 A.2d 501, 503 (1998). The Vermont Uniform Commercial Code links commercial reasonableness with good faith: "Good faith under the UCC means honesty in fact and the observance of reasonable commercial standards of fair dealing. 9A V.S.A. § 3-103(a)(4)." <u>Alpine Haven Property Owners Ass'n, Inc. v. Deptula</u>, 175 Vt. 559, 564, 830 A.2d 78, 86 (2003) (internal quotation marks omitted). See <u>Will v. Mill Condominium Owners' Ass'n</u>, 176 Vt. 380, 386, 848 A.2d 336, 340-41 (2004) (commercial reasonableness pursuant to the Vermont UCC in land transfers).

2.  <u>The Parties' Arguments</u>

BBI insists that Michael Montagne has asserted no facts that would show failure to mitigate (an affirmative defense that the Debtor has since withdrawn) or failure to act in a commercially reasonable manner, because the Debtor seems to suggest that BBI could have taken an alternative course of action to cut its losses, which would have benefitted both parties, <u>i.e.</u>, it should have cut off the farm's supplies earlier (doc. # 291, p. 10). Specifically focusing on commercial unreasonableness, BBI observes that Vermont courts have examined commercial unreasonableness in the context of an aggrieved party's sale of property and collateral, citing <u>Will</u>, 179 Vt. 500 (2006) and <u>Papadopoulos</u>, 168 Vt. 621 (1998); otherwise, "commercial reasonableness encompasses good faith and fair dealing already dispensed with above" (doc. # 291 p. 11 n.5).

11

The Debtor responds, in summary fashion, that "BBI merely asserts that the defense 'encompasses good faith and fair dealing already dispensed above.' In fact, good faith and fair dealing are not dispensed with in BBI's motion, and the commercial reasonableness defense (N) may not be stricken" (doc. # 299, p. 8).

3. Application

Again, the Debtor offers no facts to support his commercial unreasonableness affirmative defense, but simply attacks a statement BBI made in its brief. As such, he has waived his argument against striking this affirmative defense. Moreover, the Court finds that BBI did address the Debtor's good faith and fair dealing arguments in its brief, as it argued in favor of striking the (since withdrawn) Debtor's breach of contract affirmative defense which included breach of the contractual duty of good faith and fair dealing (doc. # 291, pp. 7-8). Even if BBI had not addressed the good faith and fair dealing issue, this Court has done so, when it dismissed the Debtor's breach of contract cause of action in his counterclaim, which included an assertion of good faith and fair dealing. See doc. # 307, p. 9.

The Court finds that amendment of this affirmative defense would be futile, and therefore grants BBI's motion to strike.

### G. Statute of Limitations (C)

1. Standard

The determination of the applicable limitation period depends on the nature of the harm suffered rather than the nature of the action brought. Fitzgerald v. Congleton, 155 Vt. 283, 288, 583 A.2d 595, 598 (1990). The Vermont statutes set forth two statutes of limitation that may be applicable here. 12 V.S.A. § 511 provides: "A civil action . . . shall be commenced within six years after the cause of action accrues and not thereafter." Vermont courts have applied § 511 "to both tort and contract causes of action." Id. at 287, 583 A.2d at 598. Also, 9A V.S.A. § 2-725, governing statutes of limitations in contracts for sale, provides that "[A]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." 9A V.S.A. § 2-725(1), (2).

2. The Parties' Arguments

BBI contends that it is unnecessary to reach the question of whether the four- or six year statute of limitations applies in this case because "no part of BBI's claim is stale where the Montagne farm continued accepting deliveries and making payments on its open accounts until shortly before BBI sued." (doc. # 291 p. 5). BBI cites Putnam v. Swain, 102 Vt. 90 (1929) for the proposition that "voluntary part payment of a debt, whether barred by the statute or not, if made without protestation of further liability, is a recognition of such debt by the debtor, from which the law not only implies an admission of the existence

of the balance as a subsisting debt, but also a promise to pay it which prevents the operation of the sta-

tute." It also cites 12 V.S.A. § 592, entitled "Indorsement or memorandum of payment." Id.

Michael Montagne focuses on account # 205 (BBI ledger, exhibit to doc. # 6), and states that no

purchases were being charged to that account from 2006 to the date of filing suit, December 11, 2007

(doc. # 4). He asserts that "if, as appears to be the case, all or part of account # 205 represents the balance

purportedly due on a promissory note which BBI has lost, the commencement of the statutory limitations

period may depend on the date and terms of the note, which BBI has not established" (doc. # 299, p. 5).

The Debtor goes on to say that payments to each account were from milk proceeds, and that BBI deter-

mined which account it would apply the payments to. Id. He concludes that "the statute of limitations de-

fense is at issue at least with respect to account # 205." Id.

3.  Application

The Court finds the argument proffered by the Debtor concerning the statute of limitations im-

plausible, finds that amendment would be futile, and strikes this affirmative defense. First, he has waived

the statute of limitations issue with respect to every account other than account # 205 because he did not

raise any facts or argument with regard to those accounts. The Debtor's premise that BBI may have run

afoul of the statute of limitations concerning account # 205 is based on his speculation that account # 205

represents the balance due on a promissory note. However, BBI makes clear in its second amended com-

plaint that the two promissory notes were paid and, "[d]espite payment of the original Notes, this 'note'

account remained in existence and Diane and Michael Montagne continued to utilize the account to make

certain purchases for the benefit of their farming operation" (doc. # 263 ¶ 8). BBI is not suing on the

notes, and Michael Montagne offers no facts that would support an affirmative defense directed at the

BBI notes. Nor does he identify the relevant statute of limitations and why it ran.

In any event, the holding in Putnam resonates here:

It is true that voluntary part payment of a debt, whether barred by the statute [of limita-
tions] or not, if made without protestation of further liability, is a recognition of such debt
by the debtor, from which the law not only implies an admission of the existence of the
balance as a subsisting debt, but also a promise to pay it which prevents the operation of
the statute. It is likewise true that when a debtor makes payment to one who holds several
demands against him without specifying on which debt it is to be applied, the creditor may
generally apply it on whichever he chooses.

102 Vt. 90, 146 A. at 7.

If BBI delivered goods on account # 205 until sometime in 2006, the ledger shows payment on

that account in 2007, and BBI filed the suit in 2007, there is no possible statute of limitations issue. The

mere fact that the payments were made by means of a milk check debit does not make them involuntary,

and there is no argument that BBI took these funds without the Debtor's authorization. Accordingly,

amendment of this affirmative defense would be futile and the Court strikes it.

### H.  Statute of Frauds (K)

1.  Standard

9A V.S.A. § 2-201, entitled "Formal requirements; statute of frauds," provides:

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

> (a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

> (b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

> (c) with respect to goods for which payment has been made and accepted or which have been received and accepted (§ 2-606).

9A V.S.A. § 2-201.

2.  The Parties' Arguments

BBI maintains that the statute of frauds, barring enforcement of oral agreements, can have no application where the Montagne farm continued to receive and accept goods, and paid for them, and where invoices and statements evidence the terms of the contract (citing 9A V.S.A. §§ 2-201(2) and (3)(c), as well as 9A V.S.A. § 2-202 (parol evidence) and 9A V.S.A. § 1-303 (course of performance)) (doc. # 291 p. 5). The Debtor argues that § 2-201(2) does not apply because it involves transactions "between merchants" and courts are divided about whether farmers are merchants regarding crops they sell – not buy; § 2-201(3)(c) is not applicable to contracts that are not for the sale of goods or one which was in writing but one the plaintiff could not prove the terms, and both of these statements apply to the note account; there is no claim that the Debtor accepted any of these goods and no argument he can be held liable on an alleged oral contract to pay for goods sold to another entity (MHI); and even if § 2-201(3)(c) is applicable, it would only be so regarding the particular goods delivered and accepted, and BBI has not argued that

terms orally agreed to with respect to an account relationship in general become enforceable because of acceptance of particular goods (doc. # 299 pp. 5-6).

     3.   Application

      Again, the Debtor challenges BBI's facts and argument but does not assert any of his own facts that would support a statute of frauds affirmative defense in its own right. On that basis, a motion to amend would be futile and the Court grants BBI's motion to strike this affirmative defense.

      Even if that were not the case, the Court finds that 9A V.S.A. § 2-201(3)(c) applies here, as the Debtor has admitted that "BBI sold and delivered to him on open accounts grain and fertilizer, and that the deliveries were valuable" (doc. #270 ¶ 5), and that "payments were paid by him on the accounts for fertilizer and grain." Id. ¶ 20. It is therefore unnecessary to determine whether § 2-201(2) applies. The Debtor's arguments concerning whether § 2-301(3)(c) applies are confusing, as he states that this section "is clearly not applicable to any contract which was not for the sale of goods in the first place nor to any contract which was in writing but as to which the plaintiff is unable to prove the contents of the writing." (doc. # 299 p. 6).  It is unclear what contract "not for the sale of goods" he is referring to, as he makes no factual allegation that would illuminate that argument. He concludes by stating that even if § 2-201(3)(c) applies,

> it would only be applicable with respect to the particular goods delivered and accepted. That means that the agreed purchase price for those goods must be paid. See 9A VSA § 2-201 Official Cmt. 2. BBI has cited no authority and made no argument for the proposition that terms allegedly agreed to orally with respect to an account relationship in general, such as interest rates on unpaid account balances, become enforceable because of acceptance of particular goods.

Id. This conclusory, vague, and speculative line of argument has no factual support and simply challenges BBI's facts and the position it has taken in this litigation. It is insufficient to present a statute of frauds affirmative defense. Finally, Mr. Montagne appears to argue that § 2-301(3)(c) does not apply to the terms of a promissory note "underlying all or part of account # 205." Id. However, in its second amended complaint, BBI has stated unequivocally that the two promissory notes were paid. The Debtor's linkage of the note account with the terms of the promissory note is not supported by any facts and consists only of speculation, and provides another ground upon which to strike this affirmative defense.

     ***I.***   ***Failure to state a claim upon which relief may be granted, including but not limited to, any claim for attorneys' fees and costs of collection (L)***

     1.   Standard

      The Second Circuit recently reviewed the standard on Fed. R. Civ. P. 12(b)(6), failure to state a claim:

> Generally, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. 1955
(internal quotation marks omitted) (alteration in original) (citations omitted). Instead,
"[f]actual allegations must be enough to raise a right to relief above the speculative level,
on the assumption that all the allegations in the complaint are true (even if doubtful in
fact)." Id. (citations omitted). What is required are "enough facts to state a claim to relief
that is plausible on its face." Id. at 570, 127 S.Ct. 1955. In the words of the Supreme
Court's most recent iteration of this standard, "[a] claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw the reasonable inference that
the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ----, 129
S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[W]here the well-pleaded facts do not permit
the court to infer more than the mere possibility of misconduct," however, dismissal is ap-
propriate. Id. at 1950.

Starr v. Sony BMG Music Entertainment, __ F.3d __, 2010 WL 99346 at * 4 (2nd Cir. Jan. 13, 2010).

### 2. The Parties' Arguments

BBI asserts that the Debtor "does not dispute that the farm accepted goods that it did not pay for,
and therefore the affirmative defense of failure to state a claim can be struck. The question of collection
costs and attorney fees goes to the measure of damages, and this Court now itself has raised the possibility
of BBI collecting the latter" (doc. # 291 p. 12).

The Debtor does not dispute that BBI "has stated a contract claim for the allegedly unpaid pur-
chase price for goods received," but contends that BBI "has failed to state a claim on other theories, in-
cluding unjust enrichment and for other amounts, including interest and collection costs" (doc. # 299, p.
9). He adds that BBI does not explain how recovering collection costs goes to the measure of damages. Id.

### 3. Application

Here again, the Debtor makes a legal argument, countering BBI's position, but fails to assert any
facts to support his affirmative defense. In any event, "under a quasi-contract theory of unjust enrichment,
the law implies a promise to pay when a party receives a benefit and retention of the benefit would be in-
equitable." Brookside Mem'ls, Inc. v. Barre City, 167 Vt. 558, 559, 702 A.2d 47, 49 (1997) (mem.). In
the unjust enrichment count in its second amended complaint, BBI has asserted that Diane and Michael
Montagne received the benefit of cattle feed, grain, and fertilizer, which generated significant personal
wealth and profit; they retained the benefit of the goods and services without paying for them; and they
transferred wealth generated thereby in an effort to avoid repaying BBI (doc. # 263 pp. 5-6). This suffices
to state a claim for unjust enrichment.

As to the damages issue, attorney's fees and collection costs generally constitute direct damages
that "naturally and usually flow from the breach itself," if provided for in the contract that was allegedly
breached. Smith v. Country Village Intern., Inc., 183 Vt. 535, 537, 944 A.2d 240, 243 (2007). The Deb-
tor, however, makes conclusory arguments that counter BBI's position, but asserts no facts or argument to
show why BBI has not stated a claim for attorney's fees and collection costs. Accordingly, the Court

strikes the entire failure to state a claim affirmative defense as futile. The Court notes, however, that the

Debtor will be able to put BBI to its proof on damages at trial.

### J.   *Violation of the Vermont Licensed Lender Act (P); Usury, in regard to charging interest in excess of that permitted by 9 VSA 41a (O); Illegality (H)*

   1.  Standard

   The pertinent Licensed Lender Act ("LLA") provision is 8 V.S.A. § 2233, entitled "Effect," which
provides, in part:

> No person who is required to be licensed under this chapter, shall directly or indirectly
> charge, contract for, or receive any interest, discount, consideration or charge greater than
> is authorized by section 41a or 46 of Title 9. No such loan for which a greater rate of inter-
> est, finance charge, consideration or charges than is authorized by section 41a or 46 of
> Title 9 has been charged, contracted for, or received shall be enforced in this state, and
> every person in any way participating therein in this state shall be subject to the provisions
> of this chapter. . . .

8 V.S.A. § 2233(a) (emphasis added).[2] Section 41a of Title 9, (referred to in § 2233(a)), entitled "Legal

rates," provides in pertinent part:

   (a) Except as specifically provided by law, the rate of interest or the sum allowed for forbear-
       ance or use of money shall be twelve percent per annum computed by the actuarial method.
   (b) The rate of interest or the sum allowed:
       (1) For single payment loans by lenders regulated by Title 8 and federal savings and loan
           associations, the finance charge shall not exceed 18 percent per annum.
       ***

   (d) Actuarial method

       (1) Unless otherwise specifically provided by law, all interest on closed-end accounts,
           loans or extensions of credit charged under this or any section shall be computed only
           on the outstanding balance subject to finance charge by the actuarial method of calcula-
           tion. . . . Interest shall not be paid, deducted or added to principal in advance . . .

9 V.S.A. § 41a(a), (b), (d).

   "Courts . . . are not at liberty to ignore illegal provisions in contracts . . ." City of Burlington v.

Mountain Cable Co., 151 Vt. 161, 163, 559 A.2d 153, 154 (1988).

   2.  The Parties' Arguments

   BBI argues that the LLA statute only applies to a person required to be licensed; a license is not

required for "a seller of goods or services that finances the sale of such goods or services," per 8 V.S.A. §

2201(c)(7); the usury law is inapplicable because it permits parties to contract for a rate of interest in

excess of the rate provided in 9 V.S.A. § 41a  "in the case of . . . obligations incurred by any person, part-

nership, association or other entity to finance in whole or in part income-producing business or activity,"

9 V.S.A. § 46(2); and there is no allegation that BBI ever loaned the Montagnes money other than in con-

---

[2] 8 V.S.A. § 2233 was amended by the state legislature in 2009. Many of the LLA provisions have undergone multiple
amendments over the last 25 years.

nection with financing the purchase of goods; and therefore these three affirmative defenses cannot suc-
ceed (doc. # 291, p. 4).

In his usury affirmative defense, the Debtor disputes BBI's argument that the 9 V.S.A. § 46 ex-
emption applies, because it is "expressly limited to rates of interest for which the parties contracted, and
debtor expressly denies that he agreed to the interest rates charged by BBI," and cites his answer (doc. #
270), ¶ 53. (doc. # 299, p. 3).

With regard to the LLA affirmative defense, Mr. Montagne admits "that BBI finances the sale of
goods and services, but does not admit that such financing is the only kind of loan made by BBI, and does
not admit that the refinancing of an existing account balance under new terms constitutes the financing of
a sale within the meaning of § 2201(c)(7)" (doc. # 299, p. 3). The Debtor goes on to say that one of the
accounts (account # 205) was a "note account" that did not show any entries for product purchases on
BBI's ledger; BBI initially alleged that this account represented the amount due on two promissory notes
but in its second amended complaint stated the account was an open account for the sale of grain; but the
Debtor "has not admitted the truth of either of these allegations, and BBI has not argued that there is any
conclusive evidence, or indeed any evidence at all, supporting its allegation that the account represents the
financing of a sale." Id. p. 4.

   3.   Application

Yet again, the Debtor has directed his arguments to merely facts asserted by BBI; he has not sup-
plied his own facts to support his usury, LLA, or illegality affirmative defenses. As such, amendment
would be futile and the Court grants BBI's motion to strike these three affirmative defenses.

The Court also points out that the law of the case compels this result as well. The law of the case
doctrine posits that "[w]hen a court decides upon a rule of law, that decision should continue to govern the
same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). "The
doctrine of law of the case comes into play only with respect to issues previously determined." Quern v.
Jordan, 440 U.S. 332, 347, n. 18 (1979). It "is concerned with the extent to which law applied in a deci-
sion at one stage of litigation becomes the governing principle in later stages of the same litigation." Rez-
zonico v. H & R Block, Inc., 182 F.3d 144, 148 (2d Cir. 1999). "Law of the case rules have developed to
maintain consistency and avoid reconsideration of matters once decided during the course of a single con-
tinuing lawsuit. These rules do not involve preclusion by final judgment; instead, they regulate judicial
affairs before final judgment." In re PCH Assocs., 949 F.2d 585, 592 (2d Cir. 1991) (quotation omitted),
and "operate[ ] to create efficiency, finality, and obedience within the judicial system." Allapattah Servs.,
Inc. v. Exxon Corp., 372 F. Supp. 2d 1344, 1363 (S.D. Fla. 2005).

In the decision dismissing the Debtor's amended counterclaims, the Court discussed a similar ar-
gument proffered by Mr. Montagne in the context of his negligence cause of action, where he was arguing

18

that standards of "duty" under the LLA applied to BBI. See doc. 307, p. 10. The Court rejected his theory that the LLA imposed, even on lenders, a standard of care for lending or a tort duty to protect borrowers. The Court went on to hold that, "as a matter of law, BBI is not required to comply with the LLA because the statute provides an exception for 'a seller of goods or services that finances the sale of such goods or services.' 8 V.S.A. § 2201(c)(7). BBI sold goods (grain, fertilizer), and financed the sale of those goods. Thus, it fits within that exception." Id. p. 11. As a result, the law of the case doctrine bars the Debtor's LLA and illegality affirmative defenses here. Additionally, the Court in that decision expressed its agreement with the argument proffered by BBI that § 46(2) of the usury law applies. Id. BBI makes that same argument here, and it provides an alternate ground for granting the motion to strike this affirmative defense.

### K.  Homestead Exemption(J)

1.  Standard

The Vermont statutes provide:

> The homestead of a natural person consisting of a dwelling house, outbuildings and the land used in connection therewith, not exceeding $125,000.00 in value, and owned and used or kept by such person as a homestead together with the rents, issues, profits, and products thereof, shall be exempt from attachment and execution except as hereinafter provided.

27 V.S.A. § 101 (2009).

2.  The Parties' Arguments

Mr. Montagne asserts that he "recognizes that any issue concerning the effect of his homestead exemption on the propriety of BBI's attachment or BBI's ability to levy on any execution may not technically be an affirmative defense, but the fact that it is listed in the affirmative defense section of his answer does not create any confusion for BBI." (doc. # 299 p. 9). BBI's position is that if the Debtor means to suggest by this affirmative defense

> that the propriety of BBI's non-possessory attachment once again be examined in the course of trial on BBI's claim, BBI simply responds that the attachment has been upheld in both state and bankruptcy court. The application of the homestead exemption will not be in issue unless BBI is forced to levy on that attachment to satisfy judgment on its claim

(doc. # 292, p. 13).

3.  Analysis

The Court finds BBI's arguments in support of its motion to strike this affirmative defense, with respect to vacatur of the BBI attachment, to be persuasive. The propriety of the ex parte writ of attachment has been upheld by both this Court and the state court. See doc. ## 115, 225, 293, 307. Thus, to the extent Michael Montagne parades this affirmative defense before the Court to present yet another challenge to BBI's attachment, it is to no avail, and in that regard the motion to strike is granted. However, that is the not end of the analysis.

As BBI has, in effect, acknowledged at the end of the above-cited contention, if (i) the Court determines Michael Montagne is liable for the BBI debt, and (ii) BBI seeks to levy on the attachment against property Michael Montagne asserts to be his homestead property, then the merits of the homestead exemption claim will be squarely at issue. Michael Montagne has set forth sufficient facts to pursue this affirmative defense if and when those two conditions arise.  Thus, the Court denies BBI's motion to dismiss the Debtor's homestead exemption affirmative defense; the Debtor may litigate his homestead exemption claim in this proceeding, if and when the two above-described events occur.

### L.  Attorney's Fees

BBI has renewed its request for attorney's fees, "[g]iven the multiple pleadings that the Debtor has filed in this bankruptcy without addressing the basic infirmities that the Court has clearly identified" in its March 26, 2009 Order in related adversary proceeding # 08-1022, doc. # 98 (doc. # 291, p. 3). Michael Montagne counters that the request should be denied because BBI has provided no argument for imposition of attorney's fees and its request does not comply with Fed. R. Bankr. P. 9011 (doc. # 299 p. 9).

Although the litigation in this case has been increased quite dramatically by the pleadings filed by Michael Montagne, the Court will grant a request to require the Debtor to reimburse BBI for its attorney's fees only if BBI has thoroughly complied with the pertinent substantive, procedural, and due process requirements. The Court denies BBI's request for three reasons. First, the imposition of sanctions, including an award of attorney's fees to opposing counsel, generally requires a showing of bad faith, and BBI has not established bad faith. See Gollomp v. Spitzer, 568 F. 3d 355, 368  (2d Cir. 2009). Second, while it is clear BBI incurred legal fees in examining – and discerning the legal import of – the Debtor's sixteen affirmative defenses, and in filing this motion to dismiss, that is part of the litigation process and is not adequate to warrant an award of sanctions. To prevail in a motion for sanctions under 28 U.S.C. § 1927, BBI must demonstrate that Mr. Montagne's attorney acted to "unreasonably and vexatiously" multiply the proceedings in this case, and to obtain an award of sanctions under Bankruptcy  Rule 9011, BBI must show it gave opposing counsel the requisite notice set out in that rule. See In re Rising Tide Enterprise, LLC, 2010 WL 174323 at * 2-3 (W.D.N.Y. Jan. 15, 2010). BBI has not satisfied these requirements for an award of sanctions under either § 1927 or Rule 9011, as due process requires. Third, the Debtor took the initiative to withdraw two affirmative defenses and half of a third affirmative defense based on the Court's recent rulings. While not sufficient in and of itself to defeat BBI's request for attorney's fees, this minor remedial action factor does further tip the scales against granting BBI's motion.

### CONCLUSION

Based on the foregoing, the Court grants BBI's motion to strike (doc. # 291) Michael Montagne's affirmative defenses of (A) unclean hands; (B) laches; (C) statute of limitations; (D) breach of contract by Plaintiff, including breach of contractual duty of good faith and fair dealing; (E) estoppel; (F) waiver; (G)

duress; (H) illegality; (I) payment and/or set-off; (K) statute of frauds; (L) failure to state a claim upon which relief may be granted, including but not limited to, any claim for attorneys' fees and costs of collection; (M) acquiescence; (N) failure to mitigate damages and failure to act in a commercially reasonable manner; (O) usury, in regard to charging interest in excess of that permitted by 9 VSA 41a; and (P) violation of the Vermont Licensed Lender Act. The Court denies BBI's motion to strike Michael Montagne's affirmative defense of homestead exemption (J). The Debtor may introduce evidence with respect to that affirmative defense as set forth in this decision. The Court also denies BBI's request for attorney's fees.

This constitutes the Court's findings of fact and conclusions of law.


February 8, 2010                                        Colleen A. Brown
Rutland, Vermont                                        United States Bankruptcy Judge